**WILLIS
EXHIBIT A**

# PURCHASE AGREEMENT

**THIS AGREEMENT** made and entered into this 21st day of April 2006, by and between Richard Revegno and Laura Rovegno, husband and wife, herein called Seller, and Bennie Willis, herein called buyer,

### WITNESSTH:

**IN CONSIDERATION** of the mutual promises, agreements and undertakings of the parties hereto, **IT IS MUTUALLY AGREED AS FOLLOWS:**

1. Seller agrees to sell and Buyer agrees to purchase the following described real estate Located in Rockland County, New York, to-wit:

   **28 Terri Lee Ln**
   **New Hempstead, NY 10977**

2. The purchase price for said real estate shall be $434,000.

3. Sellers are responsible for paying off any lien that has been placed against the property also including paying any amounts due for back taxes up to the date of closing.

4. Seller agrees to pay up to 6% Seller concessions towards the Buyers closing cost

5. This contract shall be binding upon the parties hereto, their heirs, executors, administrators, personal representatives, successors and\or assigns.

6. This contract constitutes the entire agreement between the parties.

7. Buyer acknowledges that there are no agreements or representations, oral or otherwise, which had been made to Buyer as an inducement to sign this contract other than those set forth herein.

**IN THE WITNESS WHEREOF,** the parties have executed this agreement the day and year first above written.

SELLER:

_Laura Rovegno_

Richard Rovegno

BUYER:

_Bennie E. Willis_

Bennie Willis

**WILLIS
EXHIBIT B**



### Waiver of Title Insurance (Owner's Policy)

I/we, has/have been advised that I/we have the right to purchase an Owner's Policy of Title Insurance covering the real property in addition to the Lender Policy of Title Insurance that is being provided to my mortgage company.

I have also been advised of the additional cost to me of obtaining such insurance and that such insurance would protect me in the event of a defect in the title to the aforesaid real estate.

By signing this Waiver I do hereby decline to purchase an Owner's Policy of Title Insurance covering my interest in the aforesaid property.

I understand that the policy of title insurance issued to the lender in this transaction does not and will not benefit me, or insure me in the event there is a defect in title to the aforesaid property.

I agree to indemnify and hold harmless the Title Insurance Company named in the Commitment for Title Insurance, and its agent, ACRAnet Mortgage Settlement Solutions, LLC, for any liability to me directly, financial or otherwise.

I acknowledge that I have no right of indemnification against the title insurance company or ACRAnet Mortgage Settlement Solutions, LLC under the Lender's Policy of Title Insurance.

_____    _____
Borrower                       Borrower


IN WITNESS WHEREOF, the Affiant has affixed his/her signature(s) and seal(s) this

_5th_ day of _May_ , _2006_ .

_____ (SEAL) (Notary signature and seal)

ROY DALE ADAMS
NOTARY
COMM. EXP.
6-1-2009
PUBLIC
BOONE COUNTY, AR

P00373

**WILLIS
EXHIBIT C**



## Residential Lease

**Parties:**
This Agreement is entered into between **RICHARD ROVEGNO & LAURA ROVEGNO, husband and wife** (hereinafter referred to as "Tenants") and **BENNIE WILLIS** (hereinafter referred to as "Landlord"). Each Tenant is jointly and severally liable for the payment of rent and performance of all other terms of this Agreement. A judgment entered against one Tenant shall be no bar to an action against other Tenants.

**Premises:**
WITNESSETH: That in consideration of the representations made in the application filed by the Tenant with the Landlord, and the rent reserved herein and the covenants herein contained, the Landlord rents to Tenant, and Tenant rents from Landlord, for residential purposes only, the premises located at **28 TERRI LEE LN, NEW HEMPSTEAD, ROCKLAND COUNTY, NEW YORK 10977.**

**Term:**
The term of this Lease is a **MONTH TO MONTH** Agreement. Commencing on the 1st day of **JUNE, 2006** and expiring on the Last Day of each month. This Agreement renews each month when a payment is received on time or with in the 10 day grace period.

**Payment of Rent:**
The rent for the term of this agreement is $3,192.01 per month in advance, the first installment to be made on the 1st **DAY OF JUNE, 2006.** And a like sum on the first day of every month thereafter, without setoff, deduction, or demand, except when that day falls on a weekend or a legal holiday, in which case rent is due on the next business day. Payment shall be made to the person and at the address the Landlord shall designate in writing. Rent is to be paid in cash, money order, cashier's check and\or certified check, or, at the option of the Landlord, in any other fashion. Rent shall not be considered paid until actual receipt thereof. Tenant placing rent monies in the mail is not sufficient for rent to be considered paid.

Rent shall be made payable to and mailed or delivered to the following address:

Bennie Willis
P.O. Box 83
Western Grove, AR 72685

**Returned Check and Stop Payment:**
In each instance that a check offered by Tenant to Landlord for any amount due under this Agreement or in payment of rent is returned for lack of sufficient funds, a "stop payment" or any other reason, a service charge of $25.00, which does not exceed the maximum amount allowed by applicable New York law, will be assessed.

P00294

**Late Charges:**
If Tenant fails to pay the rent in full before the end of the 10th day after it's due, Tenant will be assessed a late charge of $150.00 as allowed by applicable New York law. Landlord reserves and in no way waives the right to insist on payment of the rent in full on the date it is due.

**Tenant Examination and Acceptance of Premises:**
The Tenant acknowledges that he has examined the leased premises and his acceptance of this agreement is conclusive evidence that said premises are in good and satisfactory order and repair unless otherwise specified herein; and the Tenant agrees that no representations as to the condition of the premises have been made and that no agreement has been made to redecorate, repair or improve the premises unless hereinafter set forth specifically in writing. The Landlord will deliver the leased premises and all common areas in a habitable condition, pursuant to applicable state law. Tenant takes premises in its AS-is condition. Tenant agrees not to damage the premises through act or omission, and to be responsible for any damages sustained through the acts or omissions of Tenant, Tenant's family or Tenant's invitees, licensees, and\or guests. If such damages are incurred, Tenant is required to pay for any resulting repairs at the same time and in addition to the next month's rent payment, with consequences for nonpayment identical to those for nonpayment of rent described herein.

**Occupancy and Use:**
The premises are to be used only as a private residence for Tenant(s) listed as parties of the Agreement and the following minor children whose names and ages appear below:

The premises shall be occupied by no more than 7 persons, included children. The premises shall not be used for any purposes other than a private residence without the prior written consent of the Landlord.

**Disturbances and Violation of Laws:**
Tenant, guests and invitees of either tenant or guests shall not use the premises for any unlawful purpose and shall comply fully with all applicable federal, state and local laws and ordinances, including laws prohibiting the use, possession or sale of illegal drugs. Nor shall Tenant, guests and invitees of either tenant or guests use the premises in a manner offensive to others. Nor shall Tenant, guests and invitees of either tenant or guests create a nuisance by annoying, disturbing, inconveniencing or interfering with the quiet enjoyment of any other tenant or nearby resident. Tenant agrees to immediately inform Landlord and the appropriate authorities upon obtaining actual knowledge of any illegal acts on or upon the leased premises.

**Security Deposit and Return Thereof:**
Upon execution of this lease, Tenant will deposit with Landlord the sum of Ten Thousand

P00295

Dollars ($10,000), which is to be held as collateral security and applied on any rent or any other charge that may remain due and owing at the expiration of this agreement, any extension thereof or holding over period or applied on any damages to the premises caused by the Tenant, his family, invitees, employees, trades, people or pets, or other expenses suffered by Landlord as a result of a breach of any covenant of the Lease. Tenant may not utilize the security deposit as rent nor shall he deduct same from the last month's rent nor require the Landlord to indemnify itself from said sum of the money or any part thereof with respect to any particular violation or default of Tenant. In the event that any part of the said security deposit shall have been utilized by the Landlord in accordance with the terms hereof or applicable law, the Tenant shall, upon the delivery notice of same, immediately deposit with the Landlord the amount so applied by Landlord so that Landlord shall have the full deposit on hand at all times during the term of this lease and any renewal thereof or holding over. In the event of the sale of the property upon which this premises is situated or the transfer or assignment by the Landlord of this Lease, the Landlord shall have the right to transfer said security deposit to the transferee and Landlord shall be considered released from all liability for the return of the security deposit. It is agreed that the foregoing shall apply to every transfer or assignment made on the security deposit to a new Landlord.

Within two weeks, or the period of time required by State law, whichever occurs first, after the tenant has vacated the premises, Landlord shall furnish tenant, by personal delivery or by first-class mail, postage prepaid, a copy of an itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security and shall return any remaining portion of the security to the tenant.

Tenant is hereby notified, that unless otherwise provided by applicable State law, Landlord is not obligated to return Tenant's security deposit or give Tenant a written description of damages and charges until Tenant provides Landlord a written statement of Tenant's forwarding address for the purpose of refunding the security deposit. Tenant agrees that if such address is not produced within 14 days from the date of termination of the Lease, Tenant forfeit's the security deposit.

Tenant acknowledges that this paragraph constitutes written notice to him at time of payment of security deposit of his rights under applicable law.

**Application for Lease:**
Tenant acknowledges that the statements and representations made in the signed application for said premises are true, that they are deemed a part of this Lease, and the falsity of any of them shall constitute a breach hereof.

**Possession At Commencement of Term:**
Tenant shall not be entitled to possession of the premises designated for lease until the security deposit and first month's rent (or prorated portion thereof), less any applicable promotional discount, is paid in full and the premises to Tenant on or before the commencement of the term of this Lease due to another person occupying the premises,

P00296

Tenant's rights of possession hereunder shall be postponed until said premises are vacated by such other person, and rent due hereunder shall be abated at the rate of one-thirtieth (1\30) of a monthly installment for each day that possession is postponed. Tenant expressly agrees that Landlord shall not be liable for damages to Tenant in the event Tenant, for any reason whatsoever, is unable to enter and occupy the premises.

### Insurance:

Landlord shall not be liable to Tenant, Tenant's family or Tenant's invitees, licensees, and\or guests for damages not caused by Landlord or Landlord's agents. Lanlord will not compensate Tenant or anyone else for damages caused by any other source whatsoever, or by Acts of God, and Tenant is therefore required to independently purchase insurance to protect Tenant, Tenant's family, Tenant's invitees, licensees, and\or guests, and all personal property on the leased premises and\or in any common areas from any and all damages.

### Utilities:

Tenant will be responsible and pay for all utilities (gas, water, electric, refuse collection, telephone, cable or satellite TV), including all required deposits.

Tenant shall be responsible for contacting and arranging for any utility service not provided by the Landlord, and for any utilities not listed above. Tenant shall be responsible for having same utilities disconnected on the day Tenant delivers the leased premises back unto Landlord upon termination or expiration of this Lease.

### Alterations and Repairs by Tenant:

Unless authorized by law, Tenant will not, without Landlord's prior written consent, alter, re-key or install locks to the premises or install or alter any burglar alarm system. Tenant will not remodel or make any structural changes, alterations or additions to the premises, will not paper, paint or decorate, nor install, attach, remove or exchange appliances or equipment such as air conditioning, heating, refrigerating or cooking units, radio or television antennae; not drive nails or other devises into the walls or woodwork (a reasonable number of picture hangers excepted), nor refinish or shellac wood floors, nor change the existing locks of the premises, without the prior written permission of the Landlord or his Agent. Any of the above-described work shall become part of the dwelling.

### Assignment of Agreement and Subletting:

Tenant will not sublet the premises or any portion thereof, or assign this Lease without the prior written consent of Landlord.

### Surrender of Premises:

Tenant will, upon termination of this lease, surrender the premises and all fixtures and equipment of Landlord therein in good, clean and operating condition, ordinary wear and tear excepted. Tenant shall, at time of vacating premises, clean said premises including stove and refrigerator and remove trash from the premises. Upon vacating the premises

P00297

Tenant shall deliver all keys thereto to the Landlord or his Agent within twenty-four (24) hours after vacating. Failure to comply will be cause to charge Tenant for changing locks.

**Landlord's Right to Access and Inspection:**
In addition to the rights provided by applicable state law, in the event of an emergency, to make repairs or improvements or to show the premises to prospective buyers or tenants or to conduct an annual inspection or to address a safety or maintenance problem or to remove any alterations, additions, fixtures, and any other objects which may be affixed or erected in violation of the terms of this Lease, Landlord or Landlord's duly authorized agents may enter the premises. Except in cases of emergency, Tenant's abandonment of the premises, court order or where it is impractical to do so, Landlord shall give Tenant reasonable notice before entering. Furthermore, Landlord retains a Landlord's Lien on all personal property placed upon the premises to secure the payment of rent and any damages to the leased premises.

**Termination of Lease - Hold Over:**
Either Landlord or Tenant may terminate this lease at the expiration of said Lease or any extension thereof by giving the other thirty (30) days written notice prior to the due date. If Tenant shall hold over after the expiration of the term of this Lease, Tenant shall, in the absence of any written agreement to the contrary, be a tenant from month to month, as defined by applicable state law, at the monthly rate in effect during the last month of the expiring term. All other terms and provisions of this Lease shall remain in full force and effect.

In the event Tenant becomes a month-to-month tenant in the manner described above, Tenant shall be required to provide Landlord, in advance, a thirty (30) day written notice of Tenant's intention to surrender the Premises. Landlord, at Landlord's discretion, at any time during a month-to-month tenancy, may terminate the month-to-month tenancy or lease by serving Tenant with a written notice of termination, or by any other means allowed by applicable state law. Upon termination, Tenant shall vacate the premises and deliver same unto Landlord on or before the expiration of the period of notice.

**Extended Absences by Tenant and Notice Thereof:**
Tenant will notify Landlord in advance if Tenant will be away from the premises for seven (7) or more consecutive days. During such absence, Landlord may enter the premises at times reasonable necessary to maintain the property and inspect for needed repairs. If such absences are customary and frequent, the expected frequency and duration of absence should be summarized here:

**Abandonment:**
Abandonment shall be defined as the absence of the Tenant from the leased premises for a period of seven (7) or more consecutive days while rent or any monies owing remain unpaid. In such event, Tenant will be considered in default or this Lease. This definition

is subordinate to, and shall not in any way impair, the rights and remedies of Landlord under this Lease and\or applicable state law, except in the case of abandonment, Landlord or Landlord's agents may immediately or any time thereafter enter and re-take the leased premises as provided by applicable state law, and terminate this Lease without notice to Tenant.

**Property Damage - Destruction of Property:**
If the premises are rendered totally unfit for occupancy by fire, act of God, act of rioters or public enemies, or accident, the term of this Lease shall immediately cease upon the payment of rent apportioned to the day of such happening. If, however, the premises are only partially destroyed or damaged and Landlord decides to repair the same, such repairs shall be made by Landlord without unreasonable delay, and there shall be abatement in rent on proportion to the relationship the damaged portion of the leased premises bears to the whole of said premises. Tenant, Tenant's guests and invitees of either Tenant or Tenant's guests will not engage in any activity or action that may cause severe property damage.

**Hold Harmless:**
To the fullest extent permitted by applicable state law, Landlord and his Agent will be held free and harmless from any and all loss, claim or damage by reason of any accident, injury, or damage to any person or property occurring on or about the leased premises, unless such accident, injury, or damaged shall be caused by the negligence of the Landlord, its agents, servants and\or employees.

**Default \ Breach By Tenant:**
In the event of any default hereunder on the part of the Tenant, his family, servant, guests, invitees, or should the Tenant occupy the subject premises in violation of any lawful rule, regulation or ordinance issued or promulgated by the Landlord or any rental authority, then and in any of said events the Landlord shall have the right to terminate this lease by giving Tenant personally or by leaving at the leased premises a thirty (30) day written notice of termination and the Lease shall terminate upon the expiration of (30) days from the delivery of such notice if the default is not remedied within a reasonable time not in excess of thirty (30) days and the Landlord, at the expiration of said thirty (30) day notice or any shorter period conferred under or by operation of law, shall thereupon be entitled to immediate possession of said premises and may avail himself of any remedy provided by law for the restitution of possession and the recovery of delinquent rent. If this Lease is terminated, Landlord shall return all prepaid and unearned rent, and any amount of the security deposit recoverable by the Tenant.

However, in the event the default is nonpayment of rent, Landlord shall not be required to deliver thirty (30) days notice as provided above but may serve Tenant with a seven (7) day written notice of termination whereupon the Tenant must pay the unpaid rent in full or surrender the premises by the expiration of the seven (7) day notice period. Furthermore, for any substantial violation of this Lease or applicable law materially affecting health and safety, Landlord may serve Tenant with a three (3) day written notice

P00299

of termination whereupon the Tenant must cure the default by the expiration of the three (3) day notice period or surrender the premises. Upon Landlord's termination of this, Tenant expressly agrees and understands that unless prohibited by applicable state law, the entire remaining balance of unpaid rent for the remaining term of this Lease shall ACCELERATE, whereby the entire sum shall become immediately due, payable, and collectible. Landlord may hold the portion of Tenant's security deposit remaining after reasonable cleaning and repairs as a partial offset to satisfaction of the accelerated rent.

### Remedies - Cumulative:
The remedies and rights contained in and conveyed by this Lease are cumulative, and are not exclusive of other rights, remedies and benefits allowed by applicable state law.

### Waiver:
Any waiver of a default hereunder shall not be deemed a waiver of this agreement or this agreement or of any subsequent default. Acquiescence in a default shall not operate as a waiver of such default, even though such acquiescence continues for an extended period of time.

### Grounds for Termination of Tenancy:
The failure of Tenant, guests and invitees of either tenant or guests to comply with any term of this Lease is grounds for termination of the tenancy, with appropriate notice to Tenant and procedures as required by law.

### Court Costs and Attorneys Fees:
In the event that the Landlord shall find it necessary to expand any monies in legally enforcing any provisions of this lease, including the collection of rent or other charges due hereunder, Tenant agrees to pay a reasonable attorney's fee and all expenses and costs incurred thereby, to the greatest extent allowed by applicable law.

### Agents and Authority to Receive Legal Papers:
Any notice which either party may or is required to give, shall be in writing and may be given by mailing the same, by certified mail, and shall be deemed sufficiently served upon tenant if and when deposited in the mail addressed to the leased premises, or addressed to Tenant's last known post office address, or hand delivered, or placed in Tenant's mailbox to Tenant at the premises. If Tenant is more than one person, then notice to one shall be sufficient as notice to all. The Landlord, any person managing the premises and anyone designated by the Landlord as agent are authorized to accept service of process and receive other notices and demands, which may be delivered to:

Bennie Willis
P.O. Box 83
Western Grove, AR 72685

### Time:
Time is of the essence of this agreement.

**Subordination:**
Tenant agrees to accept the premises subject to and subordinate to any existing or future mortgage or other lien, and Landlord reserves the right to subject premises to same. Tenant agrees to and hereby irrevocably grants Landlord power of attorney for Tenant for the sole purpose of executing and delivering in the name of the Tenant any documents related to the Landlord's right to subject the premises to a mortgage or other lien.

**Eminent Domain:**
If the premises or any part thereof or any estate therein, or any other part of the building materially affecting Tenant's use of the premises, shall be taken by eminent domain, this lease shall terminate on the date when title vests pursuant to such taking, The rent shall be apportioned as of the termination date, and any rent paid for the period beyond that date shall be repaid to Tenant. Tenant shall not be entitled to any part of the award for such taking or any payment in lieu thereof.

**Paragraph Headings:**
The headings of particular paragraphs and subparagraphs are interested only for convenience and are not part of this Agreement and are not to act as a limitation on the scope of the particular paragraph to which the heading refers.

**Binding:**
This Lease shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, executors, administrators, successors and assigns.

**Entire Agreement:**
This document and any Attachments constitutes the final and entire Agreement between the parties hereto, and not promises or representations, other than those contained here and those implied by law, have been made by Landlord or Tenant. Neither Landlord or Tenant shall be bound by any terms, conditions, statements, warranties or representations, oral or written, not herein contained unless made in writing and signed by both Landlord and Tenant.

**Governing Law:**
This Lease shall be governed by the laws of the state of New York.

**Severability:**
The provisions of this Lease are severable and in the event any provisions, clause, sentence, section or part thereof is held to be invalid, illegal, unconstitutional, inapplicable or unenforceability shall not affect or impair any of the remaining provisions, sentences, clauses, sections, parts of the lease or their application to Tenant or other persons or circumstances. It is understood and agreed that the terms, conditions and covenants of this Lease would have been made by both parties if such invalid, illegal, unconstitutional, inapplicable or unenforceable provision, sentence, clause, section or part had not been included therein to the extent that portion of this agreement may be invalid

by striking of certain words or phrases, such words or phrases shall be deemed to be stricken and the remainder of the provisions and the remainder of the other portions of this Lease agreement shall remain in full force and effect. It is further agreed that this Lease may be executed in counterparts, each of which when considered together shall constitute the original contract.

**Additional Provisions:**

P00302

Address: _P.O. Box 83_

_Western Grove Ar 72685_

Phone: _870-439-2672_

Witness to Landlord's Signature _Bonnie E. Willis_
Print Name: _Bonnie Willis_            Date: _5-27-06_


Tenant's Signature: _Richard Roberts_
Print Name: _Richard Roberts_ Date: _5-25-06_

Tenant's Signature: _Linda Bowdoin_
Print Name: _Linda Bowdoin_ Date: _5-25-06_

P00303

# WILLIS
# EXHIBIT D

05/24/2007  15:09    8704392981                                        PAGE    05

To: Mark Militzer (Foremost)
From: Bennie Willis
Re: Contents Claim


Mr. Militzer,

This letter is to inform you that we are not going to file a contents claim at
all in regards to our loss.  We are not in any way related to the Rovegno's by
blood or marriage.  The fact that the insurance company is even talking to
them about my personal issue's bother me.  The Rovegno's are refusing to
sign a new Deed because we are not allowing them to pretend like we are
related so they can file for contents.  We will not allow someone to make us
commit insurance fraud.

With Highest Regards,

*Bennie E. Willis*

Bennie Willis

P00232

**WILLIS
EXHIBIT E**

| A. SETTLEMENT STATEMENT | Underwriter Name | U.S. Department of Housing and Urban Development |

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv. Unins. | 6. File Number: | 7. Loan Number: | 8. Mortgage Insurance Case Number |
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 9361112660 | | |

C. Note: This form is furnished to give you a statement of actual costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

| D. NAME OF BORROWER: | BENNIE E WILLIS |
| ADDRESS: | 28 TERRI LEE LN NEW HEMPSTEAD NY 10977 |

| E. NAME OF SELLER: |
| ADDRESS: |

| F. NAME OF LENDER: | PREMIUM CAPITAL FUNDING |
| ADDRESS: | 125 JERICHO TURNPIKE SUITE 500 JERICHO NY 11753 |

| G. PROPERTY ADDRESS: | 28 TERRI LEE LN NEW HEMPSTEAD NY 10977 |

| H. SETTLEMENT AGENT: | ACRANET, Telephone:4127888207 |
| PLACE OF SETTLEMENT: | 113 Technology Drive ,Pittsburgh,PA,15275 |

| I. SETTLEMENT DATE: 05/05/2006 | DISBURSEMENT DATE: 05/05/2006 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract Sales Price | 434,000.00 | 401. Contract Sales Price | 434,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower | 70,571.38 | 403. | |
| 104. | | 404. | |
| 105. Payoff Other Loans | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. School Tax | | 408. School Tax | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 363,528.61 | 420. GROSS AMOUNT DUE TO SELLER | 434,000.00 |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or Earnest Money | | 501. Excess Deposit (instructions) | |
| 202. Principal Amount of New Loans | 347,200.00 | 502. Settlement Charges to Seller | 10,505.78 |
| 203. Existing Loans | | 503. Existing Loans | |
| 204. Seller Concession | 11,940.48 | 504. Seller Concession | 11,940.48 |
| 205. | | 505. | |
| 206. | | 506. Payoff 202027203 CHAMPION MORTGAGE | 255,722.21 |
| 207. | | 507. Payoff 202027280 CHAMPION MORTGAGE CO., INC. | 61,371.90 |
| 208. | | 508. | |
| 209. | | 509. Payoff Other Loans | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town Taxes to 05/05/2006 | 95.84 | 510. City/town Taxes to 05/05/2006 | 95.84 |
| 211. County Taxes to 05/05/2006 | 363.84 | 511. County Taxes to 05/05/2006 | 363.84 |
| 212. School Tax to 05/05/2006 | 3,728.45 | 512. School Tax to 05/05/2006 | 3,728.45 |
| 213. | | 513. | |
| 215. | | 514. | |
| 216. | | 515. | |
| 217. | | 516. | |
| 218. | | 517. | |
| 219. | | 518. | |
| 220. TOTAL PAID BY/FOR BORROWER | 363,328.61 | 519. | |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 343,788.48 |
| 301. Gross amount due from borrower (line 120) | 363,328.61 | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 302. Less amounts paid by/for borrower (line 220) | 363,328.61 | 601. Gross amount due to seller (line 420) | 434,000.00 |
| | | 602. Less reduction amount due seller (line 520) | 343,788.48 |
| 303. CASH TO BORROWER | 0.00 | 603. CASH TO SELLER | 90,211.52 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

You are required by law to provide the settlement agent(Fed. Tax ID No: _____ ) with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

| TIN: ___/___/___ | SELLER(S) SIGNATURES: _Cullen Cauyon_ |
| SELLER(S) NEW MAILING ADDRESS: _7 Kuiecinski St. West Haverstraw, NY 10923_ |
| SELLER(S) PHONE NUMBERS: _914-329-8229_ (H) / _____ (W) |

_B.E.W._

LT 00018

| SETTLEMENT STATEMENT | U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | File Number: 9301105056 |
|---|---|---|
| Transactions without Sellers | OMB Approval No. 2502-0491 | Mtg Ins Case Number: FINAL |

| NAME OF BORROWER: | BENNIE E WILLIS |
|---|---|
| ADDRESS: | 28 TERRI LEE LANE  NEW HEMPSTEAD NY 10977 |
| NAME OF LENDER: | PREMIUM CAPITAL FUNDING |
| ADDRESS: | 125 JERICHO TURNPIKE SUITE 500 JERICHO NY 11753 |
| PROPERTY ADDRESS: | 28 TERRI LEE LANE  NEW HEMPSTEAD NY 10977 |
| SETTLEMENT AGENT: | ACRANET, Telephone: 4127883207 |
| PLACE OF SETTLEMENT: | 113 Technology Drive , Pittsburgh PA 15275 |

Underwriter Name:  LAWYERS TITLE INSURANCE CORPORATION AM55    SETTLEMENT DATE: 05/04/2006    DISBURSEMENT DATE: 05/04/2006

| L. Settlement Charges | | M. Disbursement to Others | |
|---|---|---|---|
| 800 . ITEMS PAYABLE IN CONNECTION WITH LOAN | | 1501. CASH TO FIRST CLOSING ACRANET MORTGAGE SETTLEMENT SOLUTIONS | 84380.89 |
| 801 . Loan Origination Fee | | 1502. | |
| 802 . Loan Discount | | | |
| 803 . Appraisal Fee | | 1503. | |
| 804 . Credit Report | | | |
| 805 . LEGAL REVIEW FEE to GIADI & BARONE LLP | 150.00 | 1504. | |
| 806 . | | | |
| 807 . | | 1505. | |
| 808 . | | | |
| 809 . | | 1506. | |
| 810 . | | | |
| 811 . | | | |
| 900 . ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | 1507. | |
| 901 . Interest from 05/05/2006 to 06/01/2006 @ $24.96 per day  PREMIUM CAPITAL FUNDING | 674.19 | 1508. | |
| 902 . Mortgage Insurance Premium | | | |
| 903 . Hazard Insurance Premium | | 1509. | |
| 904 . | | | |
| 905 . | | | |
| 1000 . RESERVES DEPOSITED WITH LENDER FOR | | 1510. | |
| 1001 . Hazard Insurance | | | |
| 1002 . Mortgage Insurance | | 1511. | |
| 1003 . City Property Tax | | | |
| 1004 . County Property Tax | | 1512. | |
| 1005 . School Taxes | | | |
| 1006 . | | 1513. | |
| 1007 . | | | |
| 1008 . | | 1514. | |
| 1009 . Aggregate Analysis Adjustment | | | |
| 1100 . TITLE CHARGES | | 1515. | |
| 1101 . Settlement or closing fee to ACRANET | 0.00 | 1516. | |
| 1102 . Abstract or title search | | | |
| 1103 . Title examination | | 1517. | |
| 1104 . Title Insurance binder | | | |
| 1105 . Document Preparation | | | |
| 1106 . Notary fees to ACRANET MORTGAGE SETTLEMENT SOLUTIONS | 100.00 | 1518. | |
| 1107 . Attorney's fees | | | |
| 1108 . Title Insurance to ACRANET | 344.00 | 1519. | |
| 1109 . Lenders coverage $ ~ | | | |
| 1110 . Owners coverage $ ~ | | 1520. TOTAL DISBURSED TO OTHERS (enter on line 1603) | 84380.89 |
| 1111 . Arbitration to ACRANET | 25.00 | | |
| 1112 . Environmental Protection Lien to ACRANET | 25.00 | N. NET SETTLEMENT | |
| 1113 . Other to ACRANET | 25.00 | | |
| 1200 . GOVERNMENT RECORDING AND TRANSFER CHARGES | | 1600. Loan Amount | 86500.00 |
| 1201 . Recording Fees Mortgage $105.00 ROCKLAND COUNTY CLERK | 105.00 | | |
| 1202 . City/County tax/stamps | | 1601. PLUS Cash/Check from Borrower | 0.00 |
| 1203 . State tax/stamps | | | |
| 1204 . TRANSFER TAX FEE to ROCKLAND COUNTY CLERK    POC-L    217.00 | 0.00 | 1602. MINUS Total Settlement Charges (line 1400) | 2419.11 |
| 1205 . TRANSFER TAX FEE to ROCKLAND COUNTY CLERK | 811.40 | | |
| 1300 . ADDITIONAL SETTLEMENT CHARGES | | 1603. MINUS Total Disbursements to Others (line 1520) | 84380.89 |
| 1301 . Survey | | | |
| 1302 . Pest Inspection | | 1604. EQUALS Disbursements to Borrower (after expiration of any applicable rescission period required by law) | 0.00 |
| 1303 . Comprehensive Endorsement to ACRANET | 59.52 | | |
| 1400 . TOTAL SETTLEMENT CHARGES | 2419.11 | | |

I have carefully reviewed the HUD-1A Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1A Settlement Statement.

*Bennie E. Willis* (signature)
BENNIE E WILLIS

The HUD-1A Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.    SETTLEMENT AGENT:                    DATE:

Deb Wienkowski

Printed On   5/5/2006 3:40:37 PM                                    form HUD-1A (2/94) ref.RESPA

LT 00019

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT   File Number: FN01112500   FINAL   PAGE 2

SETTLEMENT STATEMENT   REV. HUD-1(3/86)   Deb Wasniewski   Printed on: 5/9/2006

| | L. SETTLEMENT CHARGES | | | | PAID FROM BORROWER'S FUNDS AT | PAID FROM SELLER'S FUNDS AT |
|---|---|---|---|---|---|---|
| 700. | TOTAL SALES/BROKER'S COMMISSION based on price   $434,000.00 @   0.00% =   $0.00 | | | | | |
| | Division of commission (line 700) as follows: | | | | | |
| | ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | | |
| 801. | Loan Origination Fee | | | | | |
| 802. | Loan Discount | | | | | |
| 803. | Appraisal Fee to SULLIVAN COUNTY APPRAISAL SERVICE | | POC-B | 350.00 | 0.00 | 0.00 |
| 804. | Credit Report to PREMIUM CAPITAL FUNDING | | | | 14.08 | 0.00 |
| 805. | FLOOD DETERMINATION to PREMIUM CAPITAL FUNDING | | | | 15.00 | 0.00 |
| 806. | TAX SERVICE FEE to PREMIUM CAPITAL FUNDING | | | | 78.00 | 0.00 |
| 807. | LEGAL REVIEW FEE to GINDI & BARONE LLP | | | | 375.00 | 0.00 |
| 808. | YSP to FIRST NATIONAL MORTGAGE SOURCES LLC | | POC-L | 3472.00 | 0.00 | 0.00 |
| 809. | UNDERWRITING FEE to PREMIUM CAPITAL FUNDING | | | | 550.00 | 0.00 |
| 810. | | | | | | |
| 811. | | | | | | |
| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | | |
| 901. | Interest from 05/05/2006 to 06/01/2006 @ $70.15 per day PREMIUM CAPITAL FUNDING | | | | 1,894.05 | 0.00 |
| 902. | Mortgage Insurance Premium | | | | | |
| 903. | Hazard Insurance Premium to FOREMOST INSURANCE COMPANY | | | | 2,796.00 | |
| 904. | | | | | | |
| 905. | | | | | | |
| 1000. | RESERVES DEPOSITED WITH LENDER FOR | | | | | |
| 1001. | Hazard Insurance | | | | | |
| 1002. | Mortgage Insurance | | | | | |
| 1003. | City Property Tax | | | | | |
| 1004. | County Property Tax | | | | | |
| 1005. | School Taxes | | | | | |
| 1006. | | | | | | |
| 1007. | | | | | | |
| 1008. | | | | | | |
| 1009. | Aggregate Analysis Adjustment | | | | | |
| 1100. | TITLE CHARGES | | | | | |
| 1101. | Settlement or closing fee to ACRANET | | | | 825.00 | |
| 1102. | Abstract or title search | | | | | |
| 1103. | Title examination | | | | | |
| 1104. | Title insurance binder | | | | | |
| 1105. | Document Preparation to ACRANET MORTGAGE SETTLEMENT SOLUTIONS | | | | 125.00 | 0.00 |
| 1106. | Notary fees to ACRANET MORTGAGE SETTLEMENT SOLUTIONS | | POC-B | 100.00 | 0.00 | 0.00 |
| 1107. | Attorney's fees | | | | | |
| 1108. | Title Insurance | | | | | |
| 1109. | | | | | | |
| 1110. | | | | | | |
| 1111. | Arbitration to ACRANET | | | | 25.00 | |
| 1112. | Environmental Protection Lien to ACRANET | | | | 25.00 | |
| 1113. | Other to ACRANET | | | | 25.00 | |
| 1200. | GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | | |
| 1201. | Recording Fees Deed  $105.00 Mortgage  $120.00 Rockland County Clerk | | | | 225.00 | 0.00 |
| 1202. | City/County tax/stamps Mortgage ######## Rockland County Clerk | | | | 3,645.60 | 0.00 |
| 1203. | State tax/stamps | | | | | |
| 1204. | Transfer Tax fee to Rockland County Clerk | | | | 0.00 | 1,736.00 |
| 1205. | Tax Stamps paid by lender to Rckland County Clerk | | POC-L | 868.00 | 0.00 | 0.00 |
| 1300. | ADDITIONAL SETTLEMENT CHARGES | | | | | |
| 1301. | Survey | | | | | |
| 1302. | Pest Inspection | | | | | |
| 1303. | Variable Rate Endorsement to ACRANET | | | | 25.00 | |
| 1304. | Comprehensive Endorsement to ACRANET | | | | 222.96 | |
| 1305. | Judgment Search Fee to ACRANET | | | | 450.00 | |
| 1306. | Basic Loan Premium to ACRANET | | | | 467.00 | |
| 1307. | Basic Owners Premium to ACRANET | | | | 2,228.79 | |
| 1308. | | | | | -84,350.89 | 8,829.76 |
| 1400. | TOTAL SETTLEMENT CHARGES | | | | -70,671.39 | 10,565.76 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_Bennie E. Willis_
BENNIE E WILLIS
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

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE: TITLE 18: U.S CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is true and accurate account of this transaction.
I have caused or will cause the funds to be disbursed in accordance with this statement

LT 00020

| 1500. | SCHEDULE OF DISBURSEMENTS | | BUYER | SELLER |
|---|---|---|---|---|
| 1501. | | | | |
| 1502. | | | | |
| 1503. | shipping fee ACRANET MORTGAGE SETTLEMENT SOLUTIONS | O | 0.00 | 50.00 |
| 1504. | Wire fee ACRANET MORTGAGE SETTLEMENT SOLUTIONS | O | 0.00 | 35.00 |
| 1505. | CASH FROM 2ND CLOSING ACRANET MORTGAGE SETTLEMENT SOLUTIONS | O | -84,380.89 | 0.00 |
| 1506. | DELINQUENT TAXES ROCKLAND COUNTY COMMISSIONER | O | 0.00 | 8,744.76 |
| 1507. | | | | |
| 1508. | | | | |
| 1509. | | | | |
| 1510. | | | | |
| 1511. | | | | |
| 1512. | | | | |
| 1513. | | | | |
| 1514. | | | | |
| 1515. | | | | |
| 1516. | | | | |
| 1517. | | | | |
| 1518. | | | | |
| 1519. | | | | |
| 1520. | TOTAL DISBURSED TO OTHERS | | 323,471.49 | 85.00 |

B.E.W.

LT 00021

**WILLIS
EXHIBIT F**

PLEASE TYPE OR PRESS FIRMLY WHEN WRITING ON FORM
INSTRUCTIONS: http:// www.orps.state.ny.us or PHONE (518) 473-7222

**FOR COUNTY USE ONLY**

C1. SWIS Code  3 9 2 6 1 3

C2. Date Deed Recorded  5 / 17 / 07
                        Month  Day  Year

C3. Book  2007   C4. Page  25066

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217**
RP-5217 Rev 3/07

**PROPERTY INFORMATION**

1. Property      28         Terri Lee Lane
   Location    STREET NUMBER    STREET NAME
              Ramapo                    New Hempstead   10977
              CITY OR TOWN            VILLAGE          ZIP CODE

2. Buyer     Willis                     Bennie
   Name     LAST NAME / COMPANY        FIRST NAME

3. Tax   Indicate where future Tax Bills are to be sent
   Billing  if other than buyer address (at bottom of form)   Willis          Bennie
   Address                                                    LAST NAME / COMPANY    FIRST NAME
           28 Terri Lee Lane    New Hempstead      NY 10977
           STREET NUMBER AND STREET NAME           CITY OR TOWN    STATE  ZIP CODE

4. Indicate the number of Assessment
   Roll parcels transferred on the deed    ___ # of Parcels  OR ☐ Part of a Parcel

5. Deed
   Property  ___ X ___  OR  ___  .51
   Size     FRONT FEET    DEPTH         ACRES

6. Seller   Ronegno                    Richard F.
   Name    LAST NAME / COMPANY         FIRST NAME
           Konegno                     Laura J.
           LAST NAME / COMPANY         FIRST NAME

(Only if Part of a Parcel) Check as they apply:
4A. Planning Board with Subdivision Authority Exists  ☐
4B. Subdivision Approval was Required for Transfer    ☐
4C. Parcel Approved for Subdivision with Map Provided ☐

7. Check the box below which most accurately describes the use of the property at the time of sale:

A ☑ One Family Residential
B ☐ 2 or 3 Family Residential
C ☐ Residential Vacant Land
D ☐ Non-Residential Vacant Land
E ☐ Agricultural
F ☐ Commercial
G ☐ Apartment
H ☐ Entertainment / Amusement
I ☐ Community Service
J ☐ Industrial
K ☐ Public Service
L ☐ Forest

Check the boxes below as they apply:
8. Ownership Type is Condominium                              ☐
9. New Construction on Vacant Land                            ☐
10A. Property Located within an Agricultural District         ☐
10B. Buyer received a disclosure notice indicating
     that the property is in an Agricultural District          ☐

**SALE INFORMATION**

11. Sale Contract Date    4 / 21 / 06
                          Month  Day  Year

12. Date of Sale / Transfer   5 / 5 / 06
                              Month  Day  Year

13. Full Sale Price    4,3 4,0 0 0 . 0 0
   (Full Sale Price is the total amount paid for the property including personal property.
   This payment may be in the form of cash, other property or goods, or the assumption of
   mortgages or other obligations.) Please round to the nearest whole dollar amount.

14. Indicate the value of personal
    property included in the sale    ___ . 0 0

15. Check one or more of these conditions as applicable to transfer:
A ☐ Sale Between Relatives or Former Relatives
B ☐ Sale Between Related Companies or Partners in Business
C ☐ One of the Buyers is also a Seller
D ☐ Buyer or Seller is Government Agency or Lending Institution
E ☐ Deed Type not Warranty or Bargain and Sale (Specify Below)
F ☐ Sale of Fractional or Less than Fee Interest (Specify Below)
G ☐ Significant Change in Property Between Taxable Status and Sale Dates
H ☐ Sale of Business is Included in Sale Price
I ☐ Other Unusual Factors Affecting Sale Price (Specify Below)
J ☑ None

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

16. Year of Assessment Roll from
    which information taken   07

17. Total Assessed Value (of all parcels in transfer)   50,300

18. Property Class   210 -    19. School District Name   Spring Valley

20. Tax Map Identifier(s) / Roll Identifier(s) (If more than four, attach sheet with additional identifier(s))

42-10-1-4

**CERTIFICATION**

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

BUYER    Bennie Willis

13/5/     5/5/06

BUYER SIGNATURE    DATE    BUYER'S NAME (AFTER SALE)

Richard Ronegno
5/5/06

SELLER SIGNATURE    DATE

BUYER'S ATTORNEY

LAST NAME    FIRST NAME

AREA CODE    TELEPHONE NUMBER

NEW YORK STATE
COPY

File#:200700025066

P00372