UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BENNIE WILLIS,

                        Plaintiff,                   07-CV-3646 (SCR) (MDF)

    - against -

LANDAMERICA ONESTOP, INC., d/b/a
LAWYERS TITLE SERVICES COMPANY INC.,
and/or LAWYERS TITLE INSURANCE
CORPORATION, ACRANET MORTGAGE
SETTLEMENT SOLUTIONS, LLC, d/b/a
ACRANET LENDSERV, RICHARD ROVEGNO
and LAURA ROVEGNO,

                      Defendants.
------------------------------------------------------------X

## DECLARATION OF DIANE MCFADIN IN RESPONSE TO
## ROVEGNOS' MOTION TO VACATE DEFAULT JUDGMENT

      I, Diane McFadin, hereby declare as follows:

      1.    I am the owner of The McFadin Law Group (formerly the Law Office of Diane

McFadin) which represents plaintiff Bennie Willis in the above-captioned litigation.

      2.    As plaintiff's counsel, I am fully familiar with the facts and circumstances of this

case.

      3.    This declaration is submitted in opposition to the Rovegnos' motion to vacate the

partial default judgment entered against them on October 19, 2007.

      4.    This action was commenced on May 8, 2007 by the filing of the Summons and

Complaint. A copy of the Summons and Complaint were delivered to defendant Laura Rovegno

personally, and served on Richard Rovegno by leaving the summons and complaint with a

person of suitable age and discretion and by depositing the same by first class mail with the U.S.

Postal office. (See Exh. A attached hereto).

5.    On or about October 16, 2007, I made a motion for default judgment against the Rovegnos, serving one copy each of a Request to Enter Partial Judgment, Clerk's Certificate for Laura Rovegno, Clerk's Certificate for Richard Rovegno, Affidavit in Support of Partial Default Judgment, Partial Judgment Order and Statement of Damages upon Richard Rovegno and Laura Rovegno. I made this service upon the Rovegnos by first class mail depositing same with the U.S. Postal Service. (See Exh. B attached hereto.)

6.    Since the Rovegnos had not filed an answer, and also failed to respond to the notice of motion for default, a default judgment was granted against the Rovegnos on October 19, 2007 by Order of this Court. A copy of the signed Order of default judgment was also served by me on the Rovegnos on or about October 20, 2007, at the last known address where Laura Rovegno was personally served with service in May of 2007.   (See Exhibit C, attached hereto).

7.    As set forth in detail in the accompanying Affidavit of Bennie Willis, if the Rovegnos' motion is granted, the proceedings herein will be greatly delayed and plaintiff will be severely prejudiced thereby.

8.    Moreover, the defenses asserted by the Rovegnos in their Proposed Answer With Counterclaims are without merit, particularly as they are asserted against plaintiff, and the counterclaims, to the extent those claims could state wrongs by plaintiff, which plaintiff steadfastly denies, such claims can be more appropriately brought in a separate action.

9.    Although the Rovegnos now claim not to have had any intention to sell their home, and that the transaction was never intended to be a transfer, the Rovegnos did, in fact, execute a purchase agreement and a warranty deed for the sale of their home to Mr. Willis. (See Exh. H attached hereto, and Methany Aff'd, Exh. D).

2

10. Attached as Exhibit A to the Rovegno Affidavit is a purported *Residential Lease Purchase Option Agreement*, which although it is not executed by any party, is suggested by Mr. Rovegno to be the agreement that governs the post- closing relationship between the Rovegnos and Mr. Willis and that obligated Mr. Willis to re-convey the Property to them. However, as stated by Mr. Willis in his Affidavit, he only afterwards decided to rent the Property to the Rovegnos on a month to month basis, and did so through the written *Residential Lease* . ( See Rovegno Exh. D and Willis Aff'd, at paragraph 8).

11. The Rovegnos now claim that the *Residential Lease* is a manufactured document and that the signatures on the Residential Lease have been lifted from the *Residential Lease Purchase Option Agreement*. (See Rovegno Aff'd at paragraph 22.) It should be noted that the so – called "lifted signatures" are dated May 25, 2006, nearly a month after the signing of the deed and closing on the Property took place, thus making it highly unlikely that the Rovegnos claims of a "mortgage rescue fraud" scheme by plaintiff are true. (See Rovegno Exh. D).

12. Although the unexecuted *Residential Lease Purchase Option Agreement* (Rovegno Exh. A) bears a striking resemblance to the *Residential Lease* (Rovegno Exh. D), the executed document does *not* require Mr. Willis to option the Property back to the Rovegnos. Neither does the purchase agreement with Mr. Willis executed by the Rovegnos make any reference to any buyback provision (See Methany Aff'd, Exh. D).

13. In fact, on May 25, 2006, nearly three weeks after the closing, there was no consideration for a "lease buy back" situation as claimed by the Rovegnos.

14. There is, however, one important element that Rovegno Exhibits A and D share, i.e. the requirement that the Rovegnos provide their own insurance for their belongings. (See

3

Rovegno Aff'd. Exh. A, 4th page, under heading "Insurance" and compare with Rovegno Aff'd.

Exh. D, Bates label P00297, under heading "Insurance".)

15. Moreover, even if the Rovegnos could be correct in their claim that the *Residential*

*Lease Purchase Option Agreement* ( See Rovegno Exh. A) controlled the post- closing

relationship between them and plaintiff, under the terms of that agreement (a) plaintiff had no

duty to insure the Rovegnos' belongings, and (b) the Rovegnos were in default of that agreement

by its terms and their failure to pay rent under same, thus negating any meritorious defense

against plaintiff predicated on Rovegno Exh. A. (See Willis Aff'd at paragraphs 8,9, and 22).

16. It appears that the Rovegnos' are no strangers to litigation; nor can it be said that

they were unaware of the effects of their failure to file a timely answer to Willis's complaint. A

cursory review of only Rockland County records reveals no fewer than eight judgments totaling

approximately $40,000 that have been taken against the Rovegnos over a period of 23 years, at

least four of which are default judgments. (See Exh. D attached hereto.)

17. In addition, I found a Federal Tax Lien against Richard Rovegno in the amount of

$49,970.51 for the tax period ending December 31, 2002. (See Exh. E attached hereto.)

18. Also in the Rockland County records, there was a New York State tax lien for

$1,281.10 for the period ending December 31, 1991, that was assessed against the Property (later

cleared). (See Exh. F attached hereto). In addition to demonstrating the general financial

irresponsibility of the Rovegnos, this item also calls into question the truthfulness of Mr.

Rovegno's averment at paragraph 3 of his Affidavit, since he would not have been responsible

for the taxes on the Property in 1991 if they did not purchase it until 2000.

19. Taken together, these Rockland County records severely undermine the claim in the

Rovegno Affidavit that it was the loss of Mr. Rovegno's job in 2005 that led to the financial

difficulties and placed their home in jeopardy in the spring of 2006. These records also severely undermine the Rovegnos' claim that their "never ending cycle of troubles … were caused by [their] experience with Terry Metheny and Mr. Willis." (See Exh. G, at paragraph 23). Clearly, the Rovegnos never ending troubles began long before Mr. Willis purchased their home. (See Exh. D, E, F.)

20.    These records also severely undermine the Rovegnos' claim that their default was inadvertent. In fact, default seems to be the *modus operandi* of the Rovegnos, since the default judgments against them going back more than two decades cannot be explained away by the March 2007 fire and the devastation supposedly caused by the loss of their home.

21.    Furthermore, it is clear from the records at Exhibits D through G that these serial efaulters made a conscious decision to default in the present litigation as they have done on quite a number of other occasions.

22.    The Rovegnos' conscious decision to default in this action is made readily apparent through any cursory examination of their statements made to this Court thus far. In a statement and affidavit submitted to this Court on February 29, 2008, the Rovegnos claim, that after the fire which destroyed their home, they consulted with a number of attorneys and that the legal fees and costs associated with a potential lawsuit, however, precluded them from seeking justice in the courts. (See Exh. G attached hereto). Although the legal fees and costs may have precluded the Rovegnos from instituting an action as plaintiffs, the same can not be said about interposing an answer to the current claim or about timely responding to the notice of motion for default.

23.  It should be noted that the February 29 Rovegno letter and declaration would have suffced as an answer under the FRCP 8 and the liberal construction of the pleading rules with regard to *pro se* litigants. (See Exh. G attached hereto).

24.  While the Rovegnos also claim that lack of counsel was a factor in their failures to answer the complaint or to respond to the notice of default, the Rovegnos have also failed to offer any credible evidence that they sought out representation of any sort with regard to the instant action. Had the Rovegnos actually consulted an attorney about the current action,  they would have, at the very least, been advised that an answer must be interposed to the litigation to avoid default.

25.  The Rovegno's claim that they spoke to several attorneys following the fire are also not credible, given that attorneys would surely have advised that litigation could be brought in New York, the *situs* of the real property, and not Arkansas as stated by the Rovegnos. (See Exh. G attached hereto).

26.  As a result of a conversation with counsel for defendant LANDAMERICA, (See Rovegno Motion at page 91 of 103), the Rovegnos sought to enter this action *pro se*, however the Rovegnos do not provide any explanation as to why they did not earlier seek to proceed *in forma pauperis* or to move for the appointment of counsel by the court in this action, all of which actions the Rovegnos' " consulted counsel" would surely have suggested.  (See Rovegno Aff'd at paragraph 20.)

27.  Significant discovery has already taken place in the present litigation. The first deposition taken in this case, that of plaintiff, was in late January, a full three (3) months after the default judgment against the Rovegnos was granted. In addition to plaintiff's deposition, the parties have also undertaken and completed the depositions of most key witnesses, at substantial

expense to plaintiff.  Interrogatories and document requests have also been served and answered by all parties.

28.    While it is readily conceded that a residential fire must be one of the most horrific experiences anyone can endure, it was most assuredly not Mr. Willis's fault that the house burned down, nor that the Rovegnos' contents were uninsured.  Furthermore, in March of 2007, the Rovegnos were very much on the brink of homelessness *before* the fire, having missed several rent payments in a row.  Thus, while our sympathies are with the Rovegnos for the tribulations they have experienced, it would be inappropriate and unjust to further delay the progress of Mr. Willis's suit for redress of the wrongs he has suffered at the hands of defendants Acranet and Lawyers Title (See Willis Affidavit ) as he is not in any way responsible for the Rovegnos' sufferings.

**WHEREFORE**, I respectfully request that RICHARD AND LAURA ROVEGNO'S motion be, in all respects, denied.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief.

Diane McFadin, Esq.