# McFADIN
# EXHIBIT F

ENVELOPE

ROCKLAND COUNTY, NEW YORK
Edward Gorman
RECORDING CERTIFICATE

INSTRUMENT ID: 1997-00007055

Type of Instrument: WARR

STATE TAX COMMISSION
   TO
ROVEGNO, RICHARD F

   Received From:

Recording Charge:              .00     Recording Pages:      2

           ** EXAMINED AND CHARGED AS FOLLOWS : **
   ** TRANSFER TAX **              ** MTG/DEED AMOUNT **
         .00                             .00

RS#:                       Mortgage#:

                           Received Tax on Above Mortgage
Original ID#:                        Basic:        .00
                              Special Addl:        .00
Town:                          Additional:        .00
                         Mortgage Tax Total:        .00

Total Recording Fees:              .00

           ** THIS PAGE IS PART OF THE INSTRUMENT **

I HEREBY CERTIFY THAT THE WITHIN AND FOREGOING WAS RECORDED IN THE
CLERK'S OFFICE FOR ROCKLAND COUNTY, NEW YORK

   INSTRUMENT ID#: 1997-00007055
ON (Recorded Date): 02/27/97
       AT (Time):    :
     Terminal ID:  135





EDWARD GORMAN
County Clerk





**New York State Department of**
## Taxation and Finance
Tax Compliance Division - C.O. - ATC
P.O. Box 5149
Albany, NY 12205-5149





**Commissioner of Taxation and Finance**

against

**RICHARD F ROVEGNO
AND/OR
LAURA J ROVEGNO
28 TEM LEE LN
NEW HEMPSTEAD, NY 10977**

'97 FEB 27 A8:54

ROCKLAND COUNTY
CLERKS OFFICE

**Judgment
Creditor**

**Judgment
Debtor**

**Last Known
Address**

**Warrant ID:**
E-010570459-W001-4

**County of Judgment:**
ROCKLAND

**Article of Tax Law:**
22

The people of the state of New York to:  S CUMMINGS
an officer or employee of the Department of Taxation and Finance: **Whereas,** a tax has been found due to the
Commissioner of Taxation and Finance of the state of New York imposed by the above noted Article of Tax
Law from the debtor named, the nature and amount of which, together with the interest and penalties thereon,
are as follows:

| Assessment ID | Period Ending | Tax | Penalty | Interest | Assessment Total |
|---|---|---|---|---|---|
| L-010570459-3 | 12/31/91 | $ 1,281.10 | $ 0.00 | $ 618.00 | $ 1,899.10 |

| | | | | Total amount due ➤ | $ 1,899.10 |
|---|---|---|---|---|---|

And whereas, said tax, interest and penalties now remain wholly unpaid;

**Now therefore, we command you** to file a copy of this warrant within five days after its receipt by you in the
office of the clerk of the county named above, for entry by him in the judgment docket, pursuant to the provisions
of the Tax Law.

**And we further command you,** that you satisfy said claim of said **Commissioner of Taxation and Finance** for said
tax with penalties and interest out of the real and personal property in said county belonging to said debtor and
the debts due to him at the time when said copy of this warrant is so docketed in the office of the clerk of such
county or at any time thereafter; and that only the property in which said debtor who is not deceased has an
interest or the debts owed to him shall be levied upon or sold hereunder; and return this warrant and pay the
money collected, to the Commissioner of Taxation and Finance of the state of New York.

**Levy and collect** total amount due shown above plus accrued interest and any additional penalties provided by law.

Current interest rate  8.00 % per year on $   1,899.10  from FEBRUARY 07, 1997
The interest rate may vary according to the Tax Law.

**Warrant received at 9 o'clock A.M. on**     FEB 14 1997

Issued
By    _Cheryl Thomas_    for the Commissioner
Deputy Tax Commissioner    of Taxation and Finance

DTF-977 (5/95)    00020

# McFADIN
# EXHIBIT G

February 21, 2008

Hon. Mark D. Fox
U.S. Magistrate Judge
United States District Court
300 Quarropas St., Room 421
White Plains, NY 10601

Re:    <u>Willis v. LandAmerica Onestop, Inc., et al.</u>; SDNY 07 civ. 3646 (SCR)

Dear Magistrate Judge Fox,

We are Richard and Laura Rovegno, named defendants in this action. Plaintiff Bennie
Willis initiated this action seeking, among other things, to establish title to the property
located at 28 Terri Lee Lane, New Hempstead, New York. As explained in detail in the
attached declaration, Mr. Willis' claim to that property was the product of a mortgage
rescue fraud committed against us by Mr. Willis and his son-in-law, Terry Metheny.

Following a period of unemployment, and under the threat of foreclosure by our
mortgagor, Mr. Terry Metheny contacted us (on an unsolicited basis) to provide services
in the areas of mortgage refinance and debt consolidation. Shortly thereafter, Mr.
Metheny advised that he was unable to provide refinancing. Instead, Mr. Metheny
suggested that we sell our home, while continuing to live in it pursuant to a lease
agreement which provided that we could repurchase it after one year. Following the
"sale," but before repurchase, our home was almost totally destroyed by fire. Mr. Willis
and Mr. Metheny reneged on their promises to provide us with insurance for the value of
our possessions. We lost everything.

After the fire, we consulted with a number of prospective attorneys. Upon the advice of
counsel, we refused to comply with requests to execute any additional documents related
to the transfer of the property. The legal fees and costs associated with a potential
lawsuit, however, precluded us from seeking justice in the courts (as we believed that
such a suit needed to be commenced in Arkansas). Representing ourselves, we now seek
leave of the court to appear in this action, to move to vacate any default taken against us,
and to answer and assert counterclaims.

Together with this letter, we are submitting a declaration explaining how our home was
taken from us, an application to the court for the appointment of counsel, and a request to
proceed *in forma pauperis*. We ask that the court please allow us to proceed.

Respectfully submitted,

Richard and Laura Rovegno

Enclosures

cc:    Hon. Stephen C. Robinson
       United States District Court
       300 Quarropas St., Room 421
       White Plains, NY 10601

       Diane McFadin, Esq.
       Law Office of Diane McFadin
       11 Broadway, Suite 715
       New York, New York  10004

       Brett A. Scher, Esq.
       Wilson Elser
       150 East 42nd Street
       New York, New York 10017

       David M. Satnick
       Loeb & Loeb LLP
       345 Park Avenue
       New York, New York  10154

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENNIE WILLIS
_____

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

07 Civ. 3646 (SCR) ( )

-against-

LANDAMERICA ONESTOP, INC., d/b/a
LAWYERS TITLE SERVICES CO, INC. and/or
LAWYERS TITLE INS. CORP, ACAVIT MORTGAGE
SETTLEMENT SOLUTIONS, RICHARD REVEGNO, and LAURA REVEGNO

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

**APPLICATION FOR THE COURT
TO REQUEST COUNSEL**

1. Name of applicant. Richard and Laura Revegno
   _____

2. Explain why you feel you need a lawyer in this case. (Use additional paper if necessary)

   See attached
   _____

   _____

3. Explain what steps you have taken to find an attorney and with what results. (Use additional paper if necessary)

   See attached
   _____

   _____

4. If you need a lawyer who speaks in a language other than English, state what language you speak:

   N/A
   _____

5. I understand that if a lawyer volunteers to represent me and my lawyer learns that I can afford to pay for a lawyer, the lawyer may give this information to the Court.

6. I understand that if my answers on my Request to Proceed *In Forma Pauperis* are false, my case may be dismissed.

7. **I declare under penalty of perjury that the foregoing is true and correct.**

Dated: 2/29/08
_____

_____
Signature

Rev. 05/2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_Bennie Willis_

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

-against-

_Landmerica Onestop, Inc., et al._

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

07 Civ. 3646 (SCR) (_____)

**REQUEST TO PROCEED**
*IN FORMA PAUPERIS*
**FOR APPLICATION FOR THE**
**COURT TO REQUEST COUNSEL**

I, _Richard Roveano_ , *(print or type your name)* am the ~~plaintiff/petitioner~~ defendant in the
above entitled case and I hereby request to proceed *in forma pauperis* and without being required to prepay
fees or costs or give security. I state that because of my poverty I am unable to pay the costs of said
proceeding or to give security therefor, and that I believe I am entitled to redress.

1.     If you are presently employed:
      a) give the name and address of your employer
      b) state the amount of your earnings per month

    _Black Rock - 55 E. 52nd St. NY NY._

    _Net 2900. b/wk_

2.     If you are NOT PRESENTLY EMPLOYED:
      a) state the date of start and termination of your last employment
      b) state your earnings per month
**YOU MUST ANSWER THIS QUESTION EVEN IF YOU ARE INCARCERATED.**

3.     Have you received, within the past twelve months, any money from any source? If so, name the
source and the amount of money you received.

a) Are you receiving any public benefits?     ☑ No.     ☐ Yes, $_____.

b) Do you receive any income from any other source?     ☑ No.     ☐ Yes, $_____.

*Rev. 05/2007*

4.   Do you have any money, including any money in a checking or savings account? If so, how much?

☑ No.          ☐ Yes, $_____.

5.   Do you own any apartment, house, or building, stock, bonds, notes, automobiles or other property?
     If the answer is yes, describe the property and state its approximate value.

☐ No.   ☑ Yes,   ___bmi owed 17,000 (should have been covered by attached)___

6.   Do you pay for rent or for a mortgage? If so, how much each month?

☐ No.   ☑ Yes,   $ _2300.00_

7.   List the person(s) that you pay money to support and the amount you pay each month.

_____

_____

8.   State any special financial circumstances which the Court should consider.

___See Attached._____

_____

_____

I understand that the Court shall dismiss this case if I give a false answer to any questions in this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this _29_ day of _February_, _2008_
             date           month        year

_____
            Signature

Rev. 05/2007

## DECLARATION OF RICHARD ROVEGNO

I, RICHARD ROVEGNO, declare under penalties of perjury under the laws of the United States of America that the following is true and correct:

1. I am a named defendant in this action. Together with my wife Laura Rovegno (also a named defendant), we owned the property located at 28 Terri Lee Lane, New Hempstead, New York, which is the subject of this action, until its purported sale to Bennie Willis in May 2006. I submit this declaration in support of our application for the appointment of counsel.

2. Laura and I purchased our home at 28 Terri Lee Lane in December 2000. At that time I was employed by JP Morgan as a project manager in its IT Department.

3. In 2005, I lost my job and remained unemployed for over a year. Our mortgagor, Champion Mortgage, threatened to foreclose on our home. Needless to say, we were distraught.

4. While we were in this worried, upset and troubled state, we received a number of unsolicited telephone calls from a Mr. Terry Metheny. Mr. Metheny suggested that he could help up avoid foreclosure and stay in our house, representing that he was in the mortgage re-finance and debt consolidation business.

5. At the time, and based upon the representations he made to us, we viewed Mr. Metheny as our "guardian angel."

6. Initially, Mr. Metheny told us that he would arrange a mortgage refinance for us and work to consolidate our debts. Shortly after, Mr. Metheny told us that he tried to arrange a mortgage refinance, but that it did not work out. Mr. Metheny then suggested that we sell our home to one of his relatives, Mr. Willis, while

1

continuing to live in it pursuant to a lease agreement which provided that we could repurchase it after one year.

7.    At no time did Mr. Metheny (or Mr. Willis for that matter) advise us that Mr. Willis intended to move into our home. Rather, our agreement (see Exhibit A) was that Laura and I would continue to live in our home paying rent for one year and then re-purchase it. This agreement, as well as Mr. Metheny's and Mr. Willis' agreement to provide us with "a full years worth of insurance" on our household belongings was confirmed by Mr. Metheny in his May 4, 2006 e-mail, sent one day before the closing of the "sale" of our home, which is attached hereto as Exhibit A.

8.    At the closing of the "sale" of our home on May 5, 2006, the proceeds from the sale (approximately $90,000 to $100,000 following the repayment of our mortgage) were paid directly to Mr. Metheny's company, so that Mr. Metheny could negotiate and pay-off certain of our outstanding debts, including the outstanding property taxes on our home as well as car payments and other debts. Later we discovered that Mr. Metheny failed to pay these debts. When we confronted him, he ultimately refused our request for an itemized accounting of his use of our sale proceeds.

9.    Throughout this time, Laura and I continued to live in our home at 28 Terri Lee Lane, paying monthly rent to Mr. Willis pursuant to a written "Residential Lease Purchase Option Agreement."

10.    In November 2006, prior to the time Laura and I were to re-purchase the property, our house almost entirely burnt down in a fire, and we were left homeless. We

immediately contacted Mr. Metheny and Mr. Willis to claim the insurance on our possessions, but Mr. Willis and Mr. Metheny reneged on their promises to provide us with content insurance.

11. We lost everything we had.

12. After the fire, we consulted with a number of prospective attorneys seeking counsel as to possible claims we had against Mr. Metheny and Mr. Willis. These firms, which were contingency fee firms, still asked that we pay significant up front retainers.

13. We believed at that time, and continue to believe, that legal representation is required to advocate the fraud that was committed against us. The legal fees and costs associated with a potential lawsuit, however, precluded us from seeking justice in the courts (as we believed that such a suit needed to be commenced in Arkansas).

14. After the fire, we were asked to re-execute several documents relating to the sale of the property. Upon the advice of lawyers we consulted with at the time we refused to comply with requests to execute any additional documents related to the transfer of the property to Mr. Willis.

15. Representing ourselves, we now seek leave of the court for the appointment of counsel such that we can appear in this action, move to vacate any default taken against us, and to answer and assert counterclaims.

16.     In so applying to the Court, we ask that the Court take special consideration of the

fact that we are recovering from a fraud (which left us with many of our debts

unpaid) and a fire (which took all of our material possessions).


        I declare under penalties of perjury under the laws of the United States of

America that the foregoing is true and correct.

                             Executed on February 29 2008

                             _____
                                   RICHARD ROVEGNO

4

EXH. A

Windows Live™    Home    Hotmail    Spaces    OneCare

| Inbox | New | Reply | Reply all | Forward | Delete | Junk |

Junk

Drafts            Move to ▼                                    Options  ❓

Sent

Deleted        ## Lease & Checks

angels          From: **Terry Metheny** (terrymetheny34@yahoo.com)
                Sent:  Thu 5/04/06 1:32 PM
family          To:    jrovegno@hotmail.com
jokes           Cc:    ljrovegno@hotmail.com

Oldstuff        📎 LEASE.wps (65.1 KB), Checks.wps (14.5 KB)     Security scan upon download  🦖 TREND

trip            Hey guys,

Yvonne          Here is the final lease with final numbers and 100% accurate.

Manage folders

Today           We had to split the mortgage into two loans both due on the first. Payments
                are
Mail            $2,398.02
                $793.99
Contacts        Total: $3,192.01

Calendar


send some    This number does not include taxes or insurance. I did not put them in
awesome      escrow. We are paying a full years worth of insurance and taxes which
mail         between back taxes and taxes now due along with insurance come out to
             $16,400.

Once funds are available in my account I will wire the $5,000 to you asap.
They will be overnighting the package today and once you get it sign and
notorize the papers and send it right back and then the loan will fund either
monday or tuesday.

Make sure that you make copies of each payment on the note so that we
can refinance it back into your name as soon as possible. Please keep in
mind when you do this all you will owe is the payoffs and if you choose to
sale the home before you refinance it then 100% of the difference will be
given to you.

If you have any questions please call me.

Want to race through your inbox even faster? Try the full version of Windows Live Hotmail. (It's free, too.)

© 2008 Microsoft | Privacy | Legal                      Help Central | Account | Feedback

# Residential Lease Purchase Option Agreement

**Parties:**
This Agreement is entered into between **RICHARD ROVEGNO & LAURA ROVEGNO, husband and wife** (hereinafter referred to as "Tenants") and **BENNIE WILLIS** (hereinafter referred to as "Landlord"). Each Tenant is jointly and severally liable for the payment of rent and performance of all other terms of this Agreement. A judgment entered against one Tenant shall be no bar to an action against other Tenants.

**Premises:**
WITNESSETH: That in consideration of the representations made in the application filed by the Tenant with the Landlord, and the rent reserved herein and the covenants herein contained, the Landlord rents to Tenant, and Tenant rents from Landlord, for residential purposes only, the premises located at **28 TERRI LEE LN, NEW HEMPSTEAD, ROCKLAND COUNTY, NEW YORK 10977.**

**Term:**
The term of this Lease is a **MONTH TO MONTH** Agreement. Commencing on the **1st day of JUNE, 2006 and** expiring on the **Last Day** of each month. This Agreement renews each month when a payment is received on time or with in the 10 day grace period.

**Payment of Rent:**
The rent for the term of this agreement is $3,100.00 per month in advance, the first installment to be made on the **1st DAY OF JUNE, 2006.** And a like sum on the first day of every month thereafter, without setoff, deduction, or demand, except when that day falls on a weekend or a legal holiday, in which case rent is due on the next business day. Payment shall be made to the person and at the address the Landlord shall designate in writing. Rental is to be paid in cash, money order, cashier's check and\or certified check, or, at the option of the Landlord, in any other fashion. Rent shall not be considered paid until actual receipt thereof. Tenant placing rent monies in the mail is not sufficient for rent to be considered paid.

Rent shall be made payable to and mailed or delivered to the following address:

**Bennie Willis**
**P.O. Box 83**
**Western Grove, AR 72685**

**Returned Check and Stop Payment:**
In each instance that a check offered by Tenant to Landlord for any amount due under this Agreement or in payment of rent is returned for lack of sufficient funds, a "stop payment" or any other reason, a service charge of $25.00, which does not exceed the maximum amount allowed by applicable New York law, will be assessed.
**Late Charges:**

If Tenant fails to pay the rent in full before the end of the **10th** day after it's due, Tenant will be assessed a late charge of **$150.00** as allowed by applicable New York law. Landlord reserves and in no way waives the right to insist on payment of the rent in full on the date it is due.

**Purchase Option:**
It is hereby agreed that Tenant shall have the option to purchase real estate located at: **28 TERRI LEE LN, NEW HEMPSTEAD, ROCKLAND COUNTY, NEW YORK 10977.**

- the purchase price will not exceed the amount required to payoff the liens on title
- this purchase option must be exercised in writing no later than **1st day of July, 2007**, but shall not be effective should the Tenant be in default under any terms of this lease or upon any termination of this lease.
- For Tenant to exercise this Purchase Option, Tenant agrees to notify Landlord in writing, sent via certified mail.
- If Tenant fails to exercise this Purchase Option in strict accord with the terms and conditions herein or within the time provided herein, Tenant agrees and acknowledges that the full consideration paid to Landlord shall be retained by Landlord as consideration for this purchase option and neither party shall have any further rights or claims against the other by reason of this Purchase Option.
**INITIALED: Tenant_____**
-If the Landlord fails to perform any of the covenants of this Purchase Option, the aforesaid money paid by the Tenant, at the option of the Tenant, shall be returned to the Tenant on demand; or the Tenant shall have only the right of specific performance.
**INTIALED: Landlord_____**

**Tenant Examination and Acceptance of Premises:**
The Tenant acknowledges that he has examined the leased premises and his acceptance of this agreement is conclusive evidence that said premises are in good and satisfactory order and repair unless otherwise specified herein; and the Tenant agrees that no representations as to the condition of the premises have been made and that no agreement has been made to redecorate, repair or improve the premises unless hereinafter set forth specifically in writing. The Landlord will deliver the leased premises and all common areas in a habitable condition, pursuant to applicable state law. Tenant takes premises in its AS-is condition. Tenant agrees not to damage the premises through act or omission, and to be responsible for any damages sustained through the acts or omissions of Tenant, Tenant's family or Tenant's invitees, licensees, and\or guests. If such damages are incurred, Tenant is required to pay for any resulting repairs at the same time and in addition to the next month's rent payment, with consequences for nonpayment identical to those for nonpayment of rent described herein.

**Occupancy and Use:**
The premises are to be used only as a private residence for Tenant(s) listed as parties of

the Agreement and the following minor children whose names and ages appear below:

The premises shall be occupied by no more than 7 persons, included children. The premises shall not be used for any purposes other than a private residence without the prior written consent of the Landlord.

**Disturbances and Violation of Laws:**
Tenant, guests and invitees of either tenant or guests shall not use the premises for any unlawful purpose and shall comply fully with all applicable federal, state and local laws and ordinances, including laws prohibiting the use, possession or sale of illegal drugs. Nor shall Tenant, guests and invitees of either tenant or guests use the premises in a manner offensive to others. Nor shall Tenant, guests and invitees of either tenant or guests create a nuisance by annoying, disturbing, inconveniencing or interfering with the quiet enjoyment of any other tenant or nearby resident. Tenant agrees to immediately inform Landlord and the appropriate authorities upon obtaining actual knowledge of any illegal acts on or upon the leased premises.

**Security Deposit and Return Thereof:**
Upon execution of this lease, Tenant will deposit with Landlord the sum of Ten Thousand Dollars ($10,000), which is to be held as collateral security and applied on any rent or any other charge that may remain due and owing at the expiration of this agreement, any extension thereof or holding over period or applied on any damages to the premises caused by the Tenant, his family, invitees, employees, trades people or pets, or other expenses suffered by Landlord as a result of a breach of any covenant of the Lease. Tenant may not utilize the security deposit as rent nor shall he deduct same from the last month's rent nor require the Landlord to indemnify itself from said sum of the money or any part thereof with respect to any particular violation or default of Tenant. In the event that any part of the said security deposit shall have been utilized by Landlord in accordance with the terms hereof or applicable law, the Tenant shall, upon the delivery notice of same, immediately deposit with the Landlord the amount so applied by Landlord so that the Landlord shall have the full deposit on hand at all times during the term of this lease and any renewal thereof or holding over. In the event of the sale of the property upon which this premises is situated or the transfer or assignment by the Landlord of this Lease, the Landlord shall have the right to transfer said security deposit to the transferee and Landlord shall be considered released from all liability for the return of the security deposit, and the Tenant shall look solely to the new Landlord for the return of his security deposit. It is agreed that the foregoing shall apply to every transfer or assignment made on the security deposit to a new Landlord.

Within two weeks, or the period of time required by State law, whichever occurs first, after the tenant has vacated the premises, Landlord shall furnish tenant, by personal delivery or by first-class mail, postage prepaid, a copy of an itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security and shall return any remaining portion of the security to the tenant.

Tenant is hereby notified, that unless otherwise provided by applicable State law, Landlord is not obligated to return Tenant's security deposit or give Tenant a written description of damages and charges until Tenant provides Landlord a written statement of Tenant's forwarding address for the purpose of refunding the security deposit. Tenant agrees that if such address is not produced within 14 days from the date of termination of the Lease, Tenant forfeit's the security deposit.

Tenant acknowledges that this paragraph constitutes written notice to him at time of payment of security deposit of his rights under applicable law.

**Application for Lease:**
Tenant acknowledges that the statements and representations made in the signed application for said premises are true, that they are deemed a part of this Lease, and the falsity of any of them shall constitute a breach hereof.

**Possession At Commencement of Term:**
Tenant shall not be entitled to possession of the premises designated for lease until the security deposit and first month's rent (or prorated portion thereof), less any applicable promotional discount, is paid in full and the premises to Tenant on or before the commencement of the term of this Lease due to another person occupying the premises, Tenant's rights of possession hereunder shall be postponed until said premises are vacated by such other person, and rent due hereunder shall be abated at the rate of one-thirtieth (1/30) of a monthly installment for each day that possession is postponed. Tenant expressly agrees that Landlord shall not be liable for damages to Tenant in the event Tenant, for any reason whatsoever, is unable to enter and occupy the premises.

**Insurance:**
Landlord shall not be liable to Tenant, Tenant's family or Tenant's invitees, licensees, and/or guests for damages not caused y Landlord or Landlord's agents. Landlord will not compensate Tenant or anyone else for damages caused by any other source whatsoever, or by Acts of God, and Tenant is therefore must independently purchase insurance to protect Tenant, Tenant's family, Tenant's invitees, licensees, and/or guests, and all personal property on the leased premises and/or in any common areas from any and all damages.

**Utilities:**
Tenant will be responsible and pay for all utilities (gas, water, electric, refuse collection, telephone, cable or satellite TV), including all required deposits.

Tenant shall be responsible for contacting and arranging for any utility service not provided by the Landlord, and for any utilities not listed above. Tenant shall be responsible for having same utilities disconnected on the day Tenant delivers the leased premises back unto Landlord upon termination or expiration of this Lease.

**Alterations and Repairs by Tenant:**

Unless authorized by law, Tenant will not, without Landlord's prior written consent, alter, re-key or install any locks to the premises or install or alter any burglar alarm system. Tenant will not remodel or make any structural changes, alterations or additions to the premises, will not paper, paint or decorated, nor install, attach, remove or exchange appliances or equipment such as air conditioning, heating, refrigerating or cooking units, radio or television antennae; not drive nails or other devices into the walls or woodwork (a reasonable number of picture hangers excepted), nor refinish or shellac wood floors, nor change the existing locks of the premises, without the prior written permission of the Landlord or his Agent. Any of the above-described work shall become part of the dwelling.

## Assignment of Agreement and Subletting:

Tenant will not sublet the premises or any portion thereof, or assign this Lease without the prior written consent of Landlord.

## Surrender of Premises:

Tenant will, upon termination of this Lease, surrender the premises and all fixtures and equipment of Landlord therein in good, clean and operating condition, ordinary wear and tear excepted. Tenant shall, at time of vacating premises, clean said premises including stove and refrigerator and remove trash from the premises. Upon vacating the premises Tenant shall deliver all keys thereto to the Landlord or his Agent within twenty-four (24) hours after vacating. Failure to comply will be cause to charge Tenant for changing locks.

## Landlord's Right to Access and Inspection:

In addition to the rights provided by applicable state law, in the event of an emergency, to make repairs or improvements or to show the premises to prospective buyers or tenants or to conduct an annual inspection or to address a safety or maintenance problem or to remove any alterations, additions, fixtures, and any other objects which may be affixed or erected in violation of the terms of this Lease, Landlord or Landlord's duly authorized agents may enter the premises. Except in cases of emergency, Tenant's abandonment of the premises, court order or where it is impractical to do so, Landlord shall give Tenant reasonable notice before entering. Furthermore, Landlord retains a Landlord's Lien on all personal property placed upon the premises to secure the payment of rent and any damages to the leased premises.

## Termination of Lease - Hold Over:

Either Landlord or Tenant may terminate this lease at the expiration of said Lease or any extension thereof by giving the other thirty (30) days written notice prior to the due date. If Tenant shall hold over after the expiration of the term of this Lease, Tenant shall, in the absence of any written agreement to the contrary, be a tenant from month to month, as defined by applicable state law, at the monthly rate in effect during the last month of the expiring term. All other terms and provisions of this Lease shall remain in full force and effect.

In the event Tenant becomes a month-to-month tenant in the manner described above,

Tenant shall be required to provide Landlord, in advance, thirty (30) days written notice of Tenant's intention to surrender the Premises. Landlord, at Landlord's discretion, at any time during a month-to-month tenancy, may terminate the month-to-month tenancy or lease by serving Tenant with a written notice of termination, or by any other means allowed by applicable state law. Upon termination, Tenant shall vacate the premises and deliver same unto Landlord on or before the expiration of the period of notice.

**Extended Absences by Tenant and Notice Thereof:**
Tenant will notify Landlord in advance if Tenant will be away from the premises for seven (7) or more consecutive days. During such absence, Landlord may enter the premises at times reasonable necessary to maintain the property and inspect for needed repairs. If such absences are customary and frequent, the expected frequency and duration of absence should be summarized here:

**Abandonment:**
Abandonment shall be defined as the absence of the Tenant from the leased premises for a period of seven (7) or more consecutive days while rent or any monies owing remain unpaid. In such event, Tenant will be considered in default of this Lease. This definition is subordinate to, and shall not in any way impair, the rights and remedies of Landlord under this Lease and/or applicable state law, except in the case of abandonment, Landlord or Landlord's agents may immediately or any time thereafter enter and re-take the leased premises as provided by applicable state law, and terminate this Lease without notice to Tenant.

**Property Damage - Destruction of Property:**
If the premises are rendered totally unfit for occupancy by fire, act of God, act of rioters or public enemies, or accident, the term of this Lease shall immediately cease upon the payment of rent apportioned to the day of such happening. If, however, the premises are only partially destroyed or damaged and Landlord decides to repair the same, such repairs shall be made by Landlord without unreasonable delay, and there shall be abatement in rent in proportion to the relationship the damaged portion of the leased premises bears to the whole of said premises. Tenant, Tenant's guests and invitees of either Tenant or Tenant's guests will not engage in any activity or action that may cause severe property damage.

**Hold Harmless:**
To the fullest extent permitted by applicable state law, Landlord and his Agent will be held free and harmless from any and all loss, claim or damage by reason of any accident, injury, or damage to any person or property occurring on or about the leased premises, unless such accident, injury, or damage shall be caused by the negligence of the Landlord, its agents, servants and/or employees.

**Default / Breach By Tenant:**
In the event of any default hereunder on the part of the Tenant, his family, servant, guests, invitees, or should the Tenant occupy the subject premises in violation of any

lawful rule, regulation or ordinance issued or promulgated by the Landlord or any rental authority, then and in any of said events the Landlord shall have the right to terminate this lease by giving the Tenant personally or by leaving at the leased premises a thirty (30) day written notice of termination and the Lease shall terminate upon the expiration of (30) days from the delivery of such notice if the default is not remedied within a reasonable time not in excess of thirty (30) days and the Landlord, at the expiration of said thirty (30) day notice or any shorter period conferred under or by operation of law, shall thereupon be entitled to immediate possession of said premises and may avail himself of any remedy provided by law for the restitution of possession and the recovery of delinquent rent.  If this Lease is terminated, Landlord shall return all prepaid and unearned rent, and any amount of the security deposit recoverable by the Tenant.

However, in the event the default is nonpayment of rent, Landlord shall not be required to deliver thirty (30) days notice as provided above but may serve Tenant with a seven (7) day written notice of termination whereupon the Tenant must pay the unpaid rent in full or surrender the premises by the expiration of the seven (7) day notice period. Furthermore, for any substantial violation of this Lease or applicable law materially affecting health and safety, Landlord may serve Tenant with a three (3) day written notice of termination whereupon the Tenant must cure the default by the expiration of the three (3) day notice period or surrender the premises.  Upon Landlord's termination of this, Tenant expressly agrees and understands that unless prohibited by applicable state law, the entire remaining balance of unpaid rent for the remaining term of this Lease shall ACCELERATE, whereby the entire sum shall become immediately due, payable, and collectible. Landlord may hold the portion of Tenant's security deposit remaining after reasonable cleaning and repairs as a partial offset to satisfaction of the accelerated rent.

**Remedies - Cumulative:**
The remedies and rights contained in and conveyed by this Lease are cumulative, and are not exclusive of other rights, remedies and benefits allowed by applicable state law.

**Waiver:**
Any waiver of a default hereunder shall not be deemed a waiver of this agreement or this agreement or of any subsequent default. Acquiescence in a default shall not operate as a waiver of such default, even though such acquiescence continues for an extended period of time.

**Grounds for Termination of Tenancy:**
The failure of Tenant, guests and invitees of either tenant or guests to comply with any term of this Lease is grounds for termination of the tenancy, with appropriate notice to Tenant and procedures as required by law.

**Court Costs and Attorneys Fees:**
In the event that the Landlord shall find it necessary to expend any monies in legally enforcing any provisions of this lease, including the collection of rent or other charges due hereunder, Tenant agrees to pay a reasonable attorney's fee and all expenses and

costs incurred thereby, to the greatest extent allowed by applicable law.

**Agents and Authority to Receive Legal Papers:**
Any notice which either party may or is required to give, shall be in writing and may be given by mailing the same, by certified mail, and shall be deemed sufficiently served upon Tenant if and when deposited in the mail addressed to the leased premises, or addressed to Tenant's last known post office address, or hand delivered, or placed in Tenant's mailbox to Tenant at the premises. If Tenant is more than one person, then notice to one shall be sufficient as notice to all. The Landlord, any person managing the premises and anyone designated by the Landlord as agent are authorized to accept service of process and receive other notices and demands, which may be delivered to:

> Bennie Willis
> P.O. Box 83
> Western Grove, AR  72685

**Time:**
Time is of the essence of this agreement.

**Subordination:**
Tenant agrees to accept the premises subject to and subordinate to any existing or future mortgage or other lien, and Landlord reserves the right to subject premises to same. Tenant agrees to and hereby irrevocably grants Landlord power of attorney for Tenant for the sole purpose of executing and delivering in the name of the Tenant any documents related to the Landlord's right to subject the premises to a mortgage or other lien.

**Eminent Domain:**
If the premises or any part thereof or any estate therein, or any other part of the building materially affecting Tenant's use of the premise, shall be taken by eminent domain, this lease shall terminate on the date when title vests pursuant to such taking. The rent shall be apportioned as of the termination date, and any rent paid for the period beyond that date shall be repaid to Tenant. Tenant shall not be entitled to any part of the award for such taking or any payment in lieu thereof.

**Paragraph Headings:**
The headings of particular paragraphs and subparagraphs are inserted only for convenience and are not part of this Agreement and are not to act as a limitation on the scope of the particular paragraph to which the heading refers.

**Binding:**
This Lease shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, executors, administrators, successors and assigns.

**Entire Agreement:**
This document and any Attachments constitutes the final and entire Agreement between the parties hereto, and not promises or representations, other than those contained here

and those implied by law, have been made by Landlord or Tenant. Neither Landlord or Tenant shall be bound by any terms, conditions, statements, warranties or representations, oral or written, not herein contained unless made in writing and signed by both Landlord and Tenant.

**Governing Law:**
This Lease shall be governed by the laws of the state of New York.

**Severability:**
The provisions of this Lease are severable and in the event any provision, clause, sentence, section or part thereof is held to be invalid, illegal, unconstitutional, inapplicable or unenforceability shall not affect or impair any of the remaining provisions, sentences, clauses, sections, parts of the lease or their application to Tenant or other persons or circumstances. It is understood and agreed that the terms, conditions and covenants of this Lease would have been made by both parties if such invalid, illegal, unconstitutional, inapplicable or unenforceable provision, sentence, clause, section or part had not been included therein to the extent that portion of this agreement may be invalid by striking of certain words or phrases, such words or phrases shall be deemed to be stricken and the remainder of the provisions and the remainder of the other portions of this Lease agreement shall remain in full force and effect. It is further agreed that this Lease may be executed in counterparts, each of which when considered together shall constitute the original contract.

**Additional Provisions:**

**Tenant acknowledges receipt of an executed copy of this Lease.**

Landlord/Agent's signature_____

Title:_____

Date:_____

Address:_____

_____

Phone:_____

Witness to Landlord's Signature_____

Print Name:_____Date:_____


Tenant's Signature:_____

Print Name:_____Date:_____

Tenant's Signature:_____

Print Name:_____Date:_____

**To: Acranet Mortgage Solutions**
**From: Richard & Laura Rovegno**
**Re: Funds for the sale of 28 Terri Lee LN, New Hempstead, NY**


**To Whom It May Concern,**

**The funds that we are to receive are to be mailed to the broker and the check made out to CCLLC.**

**Thank You,**


**Richard Rovegno**


**Laura Rovegno**

# McFADIN
# EXHIBIT H

This Instrument was drafted by:
Peter Steth, Esq.
2700 E. Sunset Road
Las Vegas, Nevada 89120
After Recording Mail To:
Bennie Willis
28 Terri Lee Lane
New Hempstead, New York 10977
TAX MAP DESIGNATION
Dist.:          Sec: 42.10

Blk: 1          Lot(s): 4
Town Of         Rampo
County Of       Rockland
Tax Account No.: 10.0-13-E4.0

Certified True Copy

By _____

Signature

## WARRANTY DEED with FULL COVENANTS
### TITLE OF DOCUMENT

THIS INDENTURE, made the _5th_ day of _May_, 20___,
BETWEEN Richard F. Rovegno and Laura J. Rovegno, husband and wife, whose post office
address is 28 Terri Lee Lane, New Hempstead, New York 10977, party of the first part, and
Bennie Willis, a single man, whose post office address is 28 Terri Lee Lane, New Hempstead,
New York 10977, party of the second part.

WITNESSETH, that the party of the first part, FOUR HUNDRED THIRTY-FOUR
THOUSAND AND NO/100 DOLLARS ($434,000.00), paid by the party of the second part does
hereby grant and release unto the party of the second part, the heirs or successors and assigns
of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements
thereon erected, situate, lying and being described as follows:

VILLAGE OF NEW HEMPSTEAD, TOWN OF RAMAPO, COUNTY OF ROCKLAND AND STATE
OF NEW YORK, KNOWN AND DESIGNATED AS LOT NO. 4 IN BLOCK E ON A CERTAIN MAP
ENTITLED "MAP OF FLAMINGO ACRES, SUBDIVISION, OWNER JACOB LANDA, TOWN OF
RAMAPO, NEW YORK, DATED JUNE 1962" AND FILED IN THE ROCKLAND COUNTY CLERK'S
OFFICE ON OCTOBER 2, 1962 IN BOOK 65 OF MAPS AT PAGE 31 AS MAP NO. 3040.

BEING also known as: 28 Terri Lee Lane, New Hempstead, New York 10977

Being the same property conveyed to Richard F. Rovegno and Laura J. Rovegno,
husband and wife by Deed from Mark Metzler of record in Book _____, Page
_____, as Docket or Instrument No. _____, said County Clerk's Office.

Tax Account No.: 10.0-13-E4.0

Subject To: Covenants, conditions, reservations, limitations, easements and agreements of
record, if any, and to all applicable zoning ordinances and/or governmental restrictions, if any.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to
any streets and roads abutting the above described premises to the center lines thereof;
TOGETHER with the appurtenances and all the estate and rights of the party of the first part in
and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of
the second part, the heirs or successors and assigns of the party of the second part forever.

P00136

AND the party of the first part covenants as follows: that said party of the first part is seized of the said premises in fee simple, and has good right to convey the same; that the party of the second part shall quietly enjoy the said premises; that the said premises are free from encumbrances, except as aforesaid; that the party of the first part will execute or procure any further necessary assurance of the title to said premises; and that said party of the first part will forever warrant the title to said premises.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

In witness thereof, the party of the first part has duly executed this deed the day and year first above written:

_____          _____
Richard F. Rovegno                         Laura J. Rovegno

State of __NEW York__
County of __Rockerd__               } ss

On the __05__ day of __May_____, in the year 20__06__, before me, the undersigned, a Notary Public in and for said State, personally appeared Richard F. Rovegno and Laura J. Rovegno personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.
NOTARY STAMP/SEAL

**JON S. PALLAK**
Notary Public, State of New York
No. 01PA8115536
Qualified in Orange County
Certificate filed Rockland County
Commission Expires Sept. 7, 2008

_____
Signature and Office of Individual Taking Acknowledgement
MY Commission Expires: __Sept 7 2008__

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE

State (or District of Columbia, Territory, or Foreign Country) of _____ } ss:

On the _____ day of _____, in the year 20____, before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _____

in _____          (insert the City or other political subdivision)
(insert the State or Country or other place the acknowledgment was taken)
NOTARY STAMP/SEAL

_____
Signature and Office of Individual Taking Acknowledgement
MY Commission Expires: _____