UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BENNIE WILLIS,

                    Plaintiff,                  07-CV-3646 (SCR) (MDF)

    - against -

LANDAMERICA ONESTOP, INC., d/b/a
LAWYERS TITLE SERVICES COMPANY INC.,
and/or LAWYERS TITLE INSURANCE
CORPORATION, ACRANET MORTGAGE
SETTLEMENT SOLUTIONS, LLC, d/b/a
ACRANET LENDSERV, RICHARD ROVEGNO
and LAURA ROVEGNO,

                    Defendants.
-----------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
THE ROVEGNO DEFENDANTS' MOTION TO VACATE THE
PARTIAL DEFAULT JUDGMENT ENTERED AGAINST THEM**

                           The McFadin Law Group
                           11 Broadway, Suite 715
                           New York, NY 10004
                           *Attorney for Plaintiff Bennie Willis*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ............................................................................. 1

ARGUMENT ...................................................................................... 6

RULE .......................................................................................... 6

POINT 1 ....................................................................................... 8
ROVEGNO DEFENDANT'S DEFAULT SHOULD BE UPHELD SINCE THEIR
DEFAULT WAS WILLFUL AND NOT EXCUSABLE ..................................... 8

POINT 2 ...................................................................................... 15
PLAINTIFF WILL BE PREJUDICED IF ROVEGNOS'
DEFAULT IS VACATED ................................................................. 15

POINT 3 ...................................................................................... 16
THE ROVEGNOS DO NOT HAVE MERITORIOUS DEFENSES AGAINST
MR. WILLIS' CLAIMS ................................................................... 16

POINT 4 ...................................................................................... 19
THE ROVEGNOS CANNOT VACATE THE DEFAULT JUDGMENT
UNDER RULE 60(b) ..................................................................... 19

POINT 5 ...................................................................................... 22
THE ROVEGNOS HAVE NOT ACTED WITHIN REASONABLE TIME ...................... 22

CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*,
92 F.3d 57, 59 (2d Cir. 1996) ............................................................................. 9

*Broadcast Music, Inc. v. Sports Bar, Inc.*,
145 F.R.D. 349, 350 (D.C. Del. 1992) ............................................................. 17

*Burrell v. Henderson*,
434 F.3d 826, 831 (6th Cir. 2006) ...................................................................... 7

*Chira v. Lockheed Aircraft Corp.*,
634 F.2d 664, 666 (2d Cir. 1980) ..................................................................... 10

*Cohen v. Houseconnect Realty Corp.*,
289 A.D.2d 277, 278, 734 N.Y.S.2d 2-5, 206 (App. Div. 2d Dept. 2001) .......................... 17

*Commercial Bank of Kuwait v. Rafidain Bank*,
15 F.3d 238, 243-44 (2d Cir. 1994) .................................................................. 10

*Davis v. Musler*,
713 F.2d 907, 916 (2d Cir. 1986) ..................................................................... 14

*Dixon v. Ragland*,
2005 WL 2649484, *10 (S.D.N.Y. Oct. 14, 2005) .................................................. 12

*Enron Oil Corp. v. Diakuhara*,
10 F.3d 90, 98 (2d Cir. 1993) ......................................................................... 16

*Franchise Holding II, LLC v. Huntington Restaurant Groups, Inc.*,
375 F.3d 922, 927 (9th Cir. 2004) ..................................................................... 7

*In re G.A.D., Inc.*,
340 F.3d 331, 334-35 (6th Cir. 2003) .................................................................. 8

*Kowal v Diamond Detective Agency*,
2006 WL 278132 (W.D.N.Y. 2006) .................................................................. 15

*Marziliano v. Heckler*,
728 F.2d 151, 156 (2d Cir. 1984) ..................................................................... 11

*National Credit Union Admin. Bd. v. Vardakis*,
No. 95-CV-253, 1998 WL 667929 *2 (Aug. 3 1998) (Nickerson, J.) ............................... 17

*NY v. Green,*
420 F.3d 99, 108 (2d Cir. 2005) ............................................................... 7

*Old Republic Ins. Co. v. Pacific Fin. Servs. of America, Inc.,*
301 F.3d 54, 59 (2d Cir.2002) ................................................................ 22

*Pope v. Saget,*
29 A.D.3d 437, 441, 817 N.Y.S.2d 1, 3-4 (App. Div. 1st Dept. 2006) ............................. 17

*S.E.C. v. McNulty,*
137 F.3d 732, 738 (2d Cir. 1998) ............................................................. 9

*Schwarz v. United States,*
384 F.2d 833, 835 (2d Cir. 1967) ............................................................ 21

*Stable v. Bland,*
11th Dist. No. 2002-T-0075, 2003-Ohio-1751, 2003 WL 1793071 ................................... 9

*State Street and Trust Co. v. Inversiones Errazuriz Limitada,*
374 F.3d 158, 166-67 (2d Cir. 2004) ......................................................... 16

*Taylor v. Texgas Corp.,*
831 F.2d 255, 259 (11th Cir. 1987) .......................................................... 17

*US v. Cirami ("Cirami I"),*
535 F.2d 736, 741 (2d. Cir. 1976) ............................................................ 7

*US v. Cirami,*
563 F.2d 26, 32 (2d Cir. 1977) ............................................................... 7

*US v. Karahalias,*
205 F.2d 331, 333 (2d Cir. 1953) ............................................................. 7

*Venture Indus. Corp. v. Autoliv ASP, Inc.,*
457 F.3d 1322 (Fed. Cir. 2006) .............................................................. 8

*Watson v. Melnikoff,*
19 Misc.3d 1130(A), Slip Copy, 2008 WL 1990943 (N.Y.Sup.) ................................... 18

## PRELIMINARY STATEMENT

Plaintiff, Bennie Willis ("Mr. Willis" or "Plaintiff"), by his attorneys, The McFadin Law Group, submits this memorandum of law in opposition to the motion to vacate this Court's order granting partial default judgment against Richard and Laura Rovegno (the "Rovegnos") in this case. This is a case primarily for negligence, fraudulent concealment and violations of New York General Business Law § 349 against LandAmerica Onestop, Inc., d/b/a Lawyers Title Services Company, Inc., and/or Lawyers Title Insurance Corporation ("Lawyers Title") and Acranet Mortgage Settlement Solutions, LLC, d/b/a Acranet Lendserv ("Acranet") (collectively referred to as the "Corporate Defendants") arising from the sale of a residential property located at 28 Terri Lee Lane, New Hempstead, New York (the "Property"), by the Rovegnos to Mr. Willis. Plaintiff also sought specific performance against the Rovegnos, to require them to execute necessary ancillary documents and deliver those executed documents to Plaintiff, and to remove any and all liens or judgments against the Rovegnos that have been assessed against Property. Although the Rovegnos were duly served in the action, the failed to answer and a default judgment was entered against them on or about October 30, 2008 (*see* Exhibit C to the Rovegno Affidavit). The Rovegnos now seek to vacate that judgment.

In reviewing all facts and circumstances in light of the applicable law, it is clear that the Rovegnos cannot satisfy the requirements to overcome the partial default judgment entered against them by this Court. As their request is entirely without merit, this Court should deny their motion to vacate.

## STATEMENT OF FACTS

In the spring of 2006, Bennie Willis was contemplating a move to New York (*see* Willis Affidavit, Paragraph 2). His daughter was planning to move to the area, and Mr. Willis and his

1

wife wished to reside close their daughter and her family (*see* Willis Affidavit, Paragraph 2). Although Mr. Willis was not acquainted with the Rovegnos, through his son-in-law, Terry Metheny, Mr. Willis became aware that the Rovegnos were offering their home for sale (*see* Willis Affidavit, Paragraph 4 and 22).

Mr. Metheny had been working with the Rovegnos in an effort to refinance their home to what extent it would be possible (*see* Metheny Affidavit, Paragraphs 4-5). Mr. Metheny's efforts to help the Rovegnos refinance (*see* Metheny Affidavit, Paragraph 5) were unsuccessful. On March 27, 2006, Mr. Metheny's attempts to refinance the Rovegnos' home were rejected. The home was only appraised for $500,000.00, not the $550,000.00 needed by the Rovegnos to overcome their financial problems (*see* Metheny Affidavit, Paragraph 6). Mr. Metheny then agreed to help the Rovegnos restructure their debt (*see* Metheny Affidavit, Paragraph 9). Mr. Willis was neither party to, nor even aware of, Mr. Metheny's debt restructuring agreement with the Rovegnos (*see* Metheny Affidavit, Paragraph 8).

Towards the end of April 2006, Mr. Metheny and the Rovegnos discussed the possibility of Mr. Willis purchasing the Property from the Rovegnos (*see* Metheny Affidavit, Paragraph 7). In Mr. Willis' view, the situation was ideal, as he could live with his daughter and her family on the Property (*see* Willis Affidavit, Paragraphs 2-4). After deliberating on the matter, Mr. Willis offered the Rovegnos their asking price for the Property. On April 21, 2006, The Rovegnos executed a written contract in which they agreed to sell and Mr. Willis agreed to purchase the Property for $434,000.00 (*see* Willis Affidavit Exhibit A). At no point was there an agreement to or discussion about optioning the house back to the Rovegnos (*see* Willis Affidavit, Paragraph 4).

On or around the closing date, the Rovegnos inquired about the possibility of renting the Property from Mr. Willis, as they had been unable to find another place to live (*see* Metheny Affidavit, Paragraph 10). Mr. Willis and the Rovegnos entered into a lease agreement, whereby the Rovegnos would pay rent in the amount of Mr. Willis' monthly mortgage payments, on a month to month basis (*see* Willis Affidavit, Exhibit C). Mr. Willis had never previously seen the alleged lease agreement, called "Residential Lease Purchase Option Agreement", attached as Exhibit A to the Rovegno Affidavit (*see* Willis Affidavit, Paragraph 4).

On or before the closing date, Mr. Willis arranged to purchase title insurance for the Property, in an effort to protect his substantial investment. Through the mortgage company, Premium Capital Funding, LLC, Mr. Willis retained Acranet to prepare all the closing documents and in particular to obtain an owner's policy of title insurance, with Mr. Willis being considered owner of the Property (*see* Willis Affidavit, Paragraph 6). Acranet contracted with Lawyers Title to serve as title underwriter for the transaction. As title underwriter, it was Lawyers Title's duty to ensure that Acranet obtained and secured a bona fide Title Owner's Policy for Mr. Willis on the Property. Lawyers Title was also to oversee the proper execution, transfer, and recording of all necessary documents, including the required transfer forms TP-584 and RP-5217 forms, to comply with New York real estate law (*see* Willis Affidavit, Paragraph 15).

After securing two mortgages totaling $434,000.00, Mr. Willis was ready to close on the Property (*see* Willis Affidavit, Paragraph 5). Ms. Tricia Somerville, an agent for Acranet, informed Mr. Metheny, acting on behalf of Mr. Willis, that it was unnecessary for Mr. Willis to retain an attorney to represent him in the transaction, as the title company would be able to handle all aspects of the closing (*see* Willis Affidavit, Paragraph 6). Relying on the advice of Ms.

Somerville, Mr. Willis did not retain an attorney. The closing of the sale took place on May 5, 2006. Mr. Roy Dale Adams, an authorized representative for Acranet, oversaw the transaction, including supposedly, the execution of all required documents. At the closing, Mr. Willis was given a vast number of documents to sign. One of the many documents was entitled "Waiver of Title Insurance (Owner's Policy)", even though Mr. Willis specifically requested an owner's title policy (*see* Willis Affidavit, Paragraph 7). At no point was Mr. Willis informed of the significance of this Waiver (*see* Willis Affidavit, Paragraph 7). Acranet through its agents actively allowed Mr. Willis to believe he was receiving a Title Owner's Policy. In fact, Acranet deducted from Mr. Willis's funds at closing a premium for the Owner's Policy in the amount of $2,229.79, thus reinforcing Mr. Willis's belief that he had purchased the Owner's Title Policy (*see* Willis Affidavit, Paragraph 16).

The Corporate Defendants failed to present Mr. Willis with two necessary forms, the RP-2517 and TP-584, without which Mr. Willis's mortgages and deed could not be duly recorded (*see* Willis Affidavit, Paragraph 15). The Rockland County recorder's office returned the original mortgages and deed to Acranet so that the deficiency could be remedied, however the original documents were apparently misplaced. Mr. Willis was not notified of the problem with recording these crucial documents (*see* Willis Affidavit, Paragraph 16). To further protect his interest in the property, Mr. Willis at or near the time of closing Mr. Willis also purchased from Foremost Insurance Company a homeowner's insurance policy. This policy covered fire or other loss in sum of $434,000.00.

In or around March 2007, during the time in which the Rovegnos continued to occupy the Property, a fire occurred. The Property was almost completely destroyed, with the interior gutted irreparably (*see* Willis Affidavit, Paragraph 11). Mr. Metheny had previously encouraged the

4

Rovegnos to get insurance to cover their personal belongings in case of fire (*see* Metheny Affidavit, Paragraph 13), as the Lease Agreement clearly stated it to be the renter's responsibility to do so (*see* McFadin Declaration, Paragraph 14). Even the alleged lease agreement attached as Exhibit A to the Rovegno Affidavit requires the Rovegnos to be responsible for insuring their personal belongings (*see* McFadin Declaration, Paragraph 14).

While Mr. Willis was preparing a claim on his homeowner's insurance for the fire, he learned that the Rovegnos, were attempting to make an false insurance claim on their personal property, stating they were related to Mr. Willis (*see* Willis Affidavit, Paragraph 12). The Rovegnos went so far as to contact Mr. Willis in an effort to persuade him to tell the insurance company they were related. He declined to do (*see* Willis Affidavit, Paragraph 12).

Unfortunately, due to Lawyers Title and Acranet's failure to properly record Mr. Willis's interest in the Property, and failure to make him aware of the problem, Mr. Willis had no insurable interest in the Property (*see* Willis Affidavit, Paragraph 13). Eventually, after extensive negotiations, Foremost Insurance agreed to compensate Mr. Willis for the damage incurred on the Property (*see* Willis Affidavit, Paragraph 13).

By Spring of 2007, Mr. Willis no longer wished to move to New York, so a decision was made to sell the land (*see* Willis Affidavit, Paragraph 14). However, because of the Corporate Defendants' failure to record his interest in the Property, Mr. Willis found he could not sell the land (*see* Willis Affidavit, Paragraph 14). Therefore, in an effort to recover his losses and clear his title to the Property, on May 8, 2007, Mr. Willis brought the present litigation against the Corporate Defendants. The Rovegnos were also joined because their signatures are still needed on the RP-5217 and TP-584s and to require them to satisfy judgments assessed against the

Property that pertain to their debts and obligations (*see* Willis Complaint, attached as Exhibit "A" to Levin Affirmation).

Although the Rovegnos were duly served, they failed to answer or otherwise appear in this action (*see* McFadin Declaration, Paragraph 4). The Rovegnos were served with the default judgment documents by first class mail at the address at which Laura Rovegno was personally served with the Summons and Complaint (McFadin Declaration, Paragraph 5).This Court granted Plaintiff's Motion for Partial Default Judgment on or around October 30, 2007 (*see* McFadin Declaration, Paragraph 6).

The Rovegnos have not asserted that they were not properly served in this action. Instead they apparently have two versions as to why they did not appear. On the one hand, in their February 29, 2008 *pro se* submission to this Court, they contend that they were unable to secure legal representation due to financial constraints. However, in their present motion papers, they allege their default was due to the emotional distress and complications following the fire which destroyed the Property (*see* McFadin Declaration, Paragraph 22).

**ARGUMENT**

**RULE**

Rule 55 of the Federal Rules of Civil Procedure sets forth the criteria for entering and setting aside a default judgment. At 55(c) the rule states that the court "may set aside a default judgment under Rule 60 (b)" and/or for "good cause". In turn, Rule 60(b) sets forth the criteria under which a party may obtain relief from a judgment of the court. A default judgment may be set aside under the following criteria:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

6

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Thus, a party seeking to vacate a default judgment must present facts showing at least one of these six grounds for relief to be successful under Rule 60(b).

Rule 60(b) and Rule 55(c) are typically analyzed under the same criteria. Three equitable factors - willfulness, meritorious defenses, and whether there is prejudice to the non-defaulting party - should be shown by the party seeking to vacate a default judgment under both Rule 55(c) and/or Rule 60(b). *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006). Furthermore, a showing of "good cause" under Rule 55(c) is similar to a finding of "excusable neglect" under Rule 60(b)(1). *Franchise Holding II, LLC v. Huntington Restaurant Groups, Inc.*, 375 F.3d 922, 927 (9th Cir. 2004).

If attempting to gain relief from a default judgment under the catch-all Rule 60(b)(6) ("any other reason that justifies relief"), a party is required to meet additional standards. A party must first assert "a ground justifying relief that is not a ground encompassed within any of the first five clauses". *US v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977). Therefore, the catch-all Rule 60(b)(6) is mutually exclusive from the preceding five grounds for relief under Rule 60(b). Furthermore, a party must show there to have be "exceptional circumstances or extreme hardship" which led to the default judgment if seeking to set aside under Rule 60(b)(6). *NY. v. Green*, 420 F.3d 99, 108, n.3 (2d. Cir. 2005), *citing*, *US v. Cirami*, 535 F.2d 736, 741 (2d. Cir. 1976) ("*Cirami I*"); *US v. Karahalias*, 205 F.2d 331, 333 (2d Cir. 1953).

Additionally, "[a] motion under Rule 60(b) must be made within a reasonable time." Fed. R. Civ. P. 60(c). Courts determine this on a case by case basis, examining whether the party seeking relief from the default judgment would be prejudiced and whether the party had good reason for not acting sooner. *Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322 (Fed. Cir. 2006), *citing, In re G.A.D., Inc.*, 340 F.3d 331, 334-35 (6th Cir. 2003).

The Rovegnos have failed to show either under Rule 55(c) or 60(b) that they should be entitled to relief from the default judgment entered against them. They have failed to assert that their actions were anything but willful, have not put forth any meritorious defenses against Mr. Willis' claims, and are unconvincing in their argument that Mr. Willis would not face undue prejudice if the default judgment is vacated. Furthermore, the Rovegnos have not shown that they are entitled to relief from the default under any one of the six grounds for relief under Rule 60(b). The Rovegnos arguments do not even entitle them to the catch-all relief granted by Rule 60(b)(6), as they failed to show exceptional circumstances or extreme hardship existed which prevented them from responding to Mr. Willis' claims. Lastly, the Rovegnos have not responded to the default judgment within a reasonable time under Rule 60(c).

## POINT 1

### ROVEGNO DEFENDANT'S DEFAULT SHOULD BE UPHELD SINCE THEIR DEFAULT WAS WILLFUL AND NOT EXCUSABLE

The Rovegnos have a long history of default judgments being entered against them. A review of Rockland County records reveals at least eight prior judgments against the Rovegnos, spanning over two decades. At least four of these were default judgments (*see* McFadin Declaration, Paragraph 16). This fact alone would appear to establish a long entrenched pattern of financial irresponsibility on their part, and a considered intent to disregard both their financial obligations and the power of the courts to enforce those obligations. While not controlling, a

8

persuasive case, *Stable v. Bland*, 11th Dist. No. 2002-T-0075, 2003-Ohio-1751, 2003 WL 1793071, held that where a defendant has a history of prior default judgments, the Court may look at a pattern of defaults as being indicative of inexcusable neglect. In *Stable*, the defendant argued that the trial court had erred in taking into account previous default judgments, as they were unrelated to the case at issue. On appeal, the Court disagreed, allowing the prior unrelated default judgments to be taken into consideration, along with all other surrounding facts and circumstances, when determining whether the party's neglect was excusable or inexcusable under 60(b)(1). *Stable*, 11th Dist. No. 2002-T-0075, 2003-Ohio-1751, 2003 WL 1793071 *2. Here Mr. Willis asks this Court to do the same. In light of the Rovegnos' long history of ignoring actions brought against them for their debts and responsibilities, it is readily inferable that they have done the same in this instance. Their failure to answer Willis's lawsuit was not inadvertence or excusable neglect, but rather a part of a considered pattern of conduct. This long pattern of defaulting by the Rovegnos points to a finding of inexcusable neglect and willfulness in their actions. The Rovegnos have consistently chosen not to engage in Court proceedings, even in the face of having judgments entered against them for substantial sums of money. Taking this history of default judgments into account, along with other facts and circumstances surrounding this case, it is obvious the Rovegnos have showed a pattern of willfulness in their actions. The Court should conclude that the Rovegnos default was willful.

The courts have defined "willfulness", in regards to Rule 55(c) (and thus "excusable neglect" under Rule 60(b)(1)), *Franchise Holding II*, 375 F.3d at 927), as including conduct that is more than careless or negligent. *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998), *citing, American Alliance*, 92 F.3d 57, 61 (2d Cir. 1996). However, courts may also find default willful where the conduct of counsel or the litigant is egregious and not satisfactorily explained.

9

*American Alliance*, 92 F.3d at 60-61. Thus, a party must provide a satisfactory explanation of the reason for the default or courts will find willfulness. *McNulty*, 137 F.3d at 738. Courts have found "unexplained", "flimsy" or "untenable" reasons insufficient to justify overturning default judgments. *McNulty* 137 F.3d at 738, *citing*, *United States v. Cirami I*, 535 F.2d at 739, *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir. 1980), *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243-44 (2d Cir. 1994).

In *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d at 243-244, the Court upheld a default judgment against the Iraqi Banks for failure to respond to notice of claims against them during the Gulf War. The Iraqi Banks did not once argue that they did not receive the actual notice of claims against them. Nor did the Iraqi Banks show that they were unable to respond to the claims due to the ongoing war. Consequently, the court found the "inference of willful default" is justified, as no evidence was produced to show the war turmoil actually prevented the Iraqi banks from responding to the complaint. Thus the default judgment was upheld. It is undeniable that military conflicts would cause a great deal of hardship and mental distress to those it affects. However, even under these circumstances, the court has found this turmoil insufficient to justify vacating a default judgment.

At no point did the Iraqi Banks deny receiving notice of the claims. Furthermore, the Iraqi Banks never provided any factual evidence that they were unable to respond due to the turmoil caused by the war. Similarly, the Rovegnos have provided no evidence that they were unable to respond, except for vague claims of the "emotional distress" caused by the fire and alleged fraud perpetrated against them. However, if the courts have been unwilling to find war turmoil to be a justification for inaction in the face of a default judgment, it is hard to see how a residential fire would be considered a satisfactory explanation.

While the Rovegnos argue their circumstances are distinguishable, as the Iraqi Banks were found to have "purposely evaded service for months," *Commercial Bank of Kuwait*, 15 F.3d at 243-44, the Rovegnos have provided no evidence that they were prevented from answering the claims against them, as they have so often done in the past. Also like the Iraqi Banks, the Rovegnos have not denied knowledge that the claims were brought against them. Evidence shows that the Rovegnos were duly served and aware of the claims and the motion for default judgment, yet still failed to respond (*see* McFadin Declaration, Paragraph 5). Whether evading service or simply ignoring the complaints and the motion for default judgment, a finding of "willfulness" is appropriate here. Thus, as was the case in *Commercial Bank of Kuwait*, the default judgment should be upheld.

In *Marziliano v. Heckler*, 728 F.2d 151, 156 (2d Cir. 1984), the Court refused to vacate a default judgment where no adequate explanation was given as to why the defendant did not inform the Court that there was an agreement to postpone an answer date between the parties. Thus, being fully aware of the Court's deadline, and that the Court was unaware of the parties' agreement, a default judgment was entered. Since no adequate explanation was ever given as to why the Court was not notified, the actions of the defendant were determined to be willful. Similarly, here, the Rovegnos have not provided an adequate explanation as to why they did not respond to Mr. Willis' claims, even though they were properly served and aware of them. If they had legitimate issues which prevented them from responding, as they so claim, the Rovegnos could have alerted the Court or Mr. Willis anytime between when they should have answered, in June of 2007, and October of 2007. They were properly served, and therefore aware of all deadlines to respond. However, instead they chose to ignore the claims of Mr. Willis entirely

11

until "contacted by counsel for other defendants" (*see* Rovegnos' Memorandum of Law). Thus, the Rovegnos' actions leading to default must be considered willful.

The Rovegnos attempt to argue that their actions were not "willful", specifically mentioning they had sought legal representation, albeit unsuccessfully, to protect their interests in the litigation to vacate the partial default judgment. However, they have failed to offer any evidence of doing so. Courts have held that where there is no evidence a client has diligently sought out counsel, a finding that a party's inaction is willful should be made. *Dixon v. Ragland*, 2005 WL 2649484, *10 (S.D.N.Y. Oct. 14, 2005), *citing*, *Cimari I*, 535 F.2d at 741. The Rovegnos have failed to offer any evidence that they sought out representation of any sort, diligently or otherwise, relating to the default judgment entered against them. Thus, under *Dixon*, the Rovegnos' inaction should be considered willful. It is unclear why the Rovegnos have lately been able to obtain legal counsel, even though they previously could not during the prior year when the litigation was commenced, when they first were made aware of the claims, and at a time when they could have participated in an extensive discovery which has already been completed without them. Without a valid explanation, this must be viewed as too little, too late.

According to the Rovegnos' February 29, 2008 submission, they *only* sought legal representation when contemplating whether to bring forth affirmative complaints against Mr. Willis and Mr. Metheny over a dispute involving whose duty it was to provide insurance for their personal belongings, in regards to the fire that occurred on the Property (*see* McFadin Declaration, Paragraph 22). For some unknown reason, the Rovegnos did not take the same care or make the same effort when served with notice of claims against them by Mr. Willis in his effort to clear his title to the Property - the issue in *this* present case. At a time when the Rovegnos were likely to have been at the apex of their alleged emotional distress caused by the

fire, they were able to actively consider and calculate whether it was in their best interest to engage in affirmative legal action. However, when it came time to defend themselves against these claims by Mr. Willis at a later date, the Rovegnos allege they were too emotionally distraught by the fire to respond. This is inconsistent, and their claims that they spoke to various lawyers about their legal problems lack credibility (*see* McFadin Declaration, Paragraph 22).

The Rovegnos willfully chose to ignore the notice of claims and motions in regards to *this* present matter, and have not shown they diligently consulted with counsel to defend their interests. However, when deciding whether to pursue their own affirmative claims, more close in time to the fire which supposedly caused them such debilitating emotional distress, the Rovegnos were able to consult with counsel and make factual determinations that their financial status was prohibitive of them bringing suit against Mr. Willis and Mr. Metheny (*see* McFadin Declaration, Paragraph 22). This is indicative of a willful choice to ignore Mr. Willis' claims and is further evidence that the default judgment should be upheld.

The Rovegnos further seek support in *American Alliance*, 92 F.3d at 61. There, the Court held that Eagle Insurance Co.'s failure to file its answer to the complaint, due to a "filing mistake" by its in-house counsel's clerk, was not willful, but remained grossly negligent and should still be weighed against granting Eagle Insurance Co. vacatur relief. In effect, the Court found that misfiling was grossly negligent, not willful. The Rovegnos' circumstances are considerably different. The misfiling occurring in *American Alliance* was caused by an office manager, resulting in notice of the claims going unnoticed for two months. The Rovegnos, on the other hand, were personally served with notice and have made no argument that they were unaware of the claims against them. No "misfiling" took place. No third party misplaced the documents. The Rovegnos' weak claim that the documents "fell through the cracks" is

13

unconvincing. Their only excuse is that they were too preoccupied to respond. This cannot be considered mere negligence or inadvertence, but rather illustrates a conscious and willful decision not to respond as, again, they have a pattern of doing.

Rovegnos also rely on *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1986). There the court vacated a default judgment having found a legitimate dispute as to whether the party to a case was properly served with notice. The Rovegnos' situation is distinguishable from *Davis*, however. Again, the Rovegnos have not disputed that they were properly served with notice of the claims against them. Furthermore, in *Davis*, the Court found that because the party seeking to vacate the default judgment had previously participated in supplementary proceedings, the default was unlikely to be willful. *Davis* 713 F.2d at 915. Conversely, in the present action, the Rovegnos made no such attempt to be involved in the case at any prior stage, even though they were properly served with notice and aware of the claims against them.

The Rovegnos have utterly failed to provide a satisfactory explanation as to why they allowed a default judgment to be entered against them. They argue that their failure to answer was a direct result of the emotional distress caused by the fire to their home and an alleged fraudulent scheme and that they were previously unable to secure legal representation. While the Rovegnos' circumstances were no doubt distressing, it should not be considered a free-pass for failure to serve an answer. The fire of March 2007 cannot be blamed for their long history of ignoring their financial obligations in the past. As the cases above illustrate, only where a satisfactory explanation is given will courts be likely to vacate a default judgment. Otherwise, a default must be considered willful under both Rule 55(c) and Rule 60(b).

For these reasons, it is clear that the Rovegnos' actions in the face of the claims made against them should be considered to be willful. The Rovegnos have provided no satisfactory

14

reason as to why they allowed a default judgment to be entered against them; rather, they have a pattern of disregarding litigation brought against them.

## POINT 2

## PLAINTIFF WILL BE PREJUDICED IF ROVEGNOS' DEFAULT IS VACATED

Another criteria which must be considered under Rule 55(c) is to what extent the non-defaulting party will be prejudiced if the default judgment is vacated. *American Alliance*, 92 F.3d at 59. While "delay alone is not a sufficient basis for establishing prejudice," *Green*, 420 F.3d at 110, *citing*, *Davis*, 713 F.2d at 916, "[a]n absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief from the judgment. '[C]ourts have an interest in expediting litigation, [and] abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct,'" *McNulty*, 137 F.3d at 738, *citing*, *American Alliance*, 92 F.3d at 61. However, where there is a showing that "delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion'", courts may find prejudice in vacating default judgments. *Kowal v Diamond Detective Agency*, 2006 WL 278132 (W.D.N.Y. 2006); *Davis v. Musler*, 713 F.2d at 916.

Here, the Revegnos' decision to default rather than participate in the litigation has resulted in  Mr. Willis proceeding with his claims under the justified belief they did not wish to be involved. Extensive discovery has since been conducted, and nearly completed.  Now, suddenly, the Rovegnos have decided to claim they unwillingly defaulted.  If the Rovegnos are allowed to re-enter this litigation it will cause considerable delay and expense in the litigation itself. A number of depositions would have to be re-done. Additionally, the delay in resolving Mr. Willis' claims will result in great financial hardship to him, as he would have to continue paying over $5,000 a month on the mortgage on the Property - a piece of land with no house that

he cannot sell or put to any beneficial use. Thus, the prejudice that will result to Mr. Willis is much greater than should be permissible, under the circumstances.

In addition, the Rovegnos' claims for fraud actually stem from a dispute with Mr. Metheny, a nonparty to this action (*see* Willis Affidavit, Paragraph 22). The Rovegnos can seek redress for the wrongs they are asserting against Mr. Metheny in a separate action.

In light of the willful default of the Rovegnos and the substantial prejudice to Mr. Willis if the default judgment is vacated, the Rovegnos' motion should be denied.

## POINT 3

## <u>THE ROVEGNOS DO NOT HAVE MERITORIOUS DEFENSES AGAINST</u>

## <u>MR. WILLIS' CLAIMS</u>

The Rovegnos allege a number of potentially meritorious defenses which they claim entitle them to vacatur of the default judgment. While it is conceded that they need not present "conclusive evidence" to show there is a meritorious defense., *Davis*, 713, F.2d at 916,  the meritorious claims the Rovegnos present are not directed at Mr. Willis at all, but rather against Mr. Metheny, a nonparty to this action.

The Rovegnos have made only extremely tenuous and unsubstantiated claims that Mr. Willis was part of a scheme to defraud them. To make a sufficient showing of a meritorious defense, the Rovegnos "must present evidence of facts that, if proven at trial, would constitute a complete defense." *State Street and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158,167, *citing*, *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993); *see also*, *McNulty*, 137 F.3d at 740. "This standard applies regardless of whether there has been an evidentiary hearing or an opportunity for discovery." *State Street*, 374 F.3d at 167. Thus, the Rovegnos must present evidence of facts constituting *prima facie* elements of fraud by Mr. Willis.

Under New York law, the Rovegnos must show "a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was made, justifiable reliance by the [movant], and resulting in injury" to the movant. *Pope v. Saget*, 29 A.D.3d 437, 441, 817 N.Y.S.2d 1, 3-4 (App. Div. 1st Dept. 2006); *Cohen v. Houseconnect Realty Corp.*, 289 A.D.2d 277, 278, 734 N.Y.S.2d 2-5, 206 (App. Div. 2d Dept. 2001). This they have not done and cannot do. At no point have the Rovegnos shown *prima facie* evidence that Mr. Willis engaged in fraud against them. The Rovegnos' meritorious claims, if any, are against a nonparty to this action, Mr. Metheny.

While the Rovegnos may choose to pursue an action against Mr. Metheny, that "does not constitute a meritorious defense to [their] own liability to [Mr. Willis]". *National Credit Union Admin. Bd. v. Vardakis*, No. 95-CV-253, 1998 WL 667929 *2 (Aug. 3 1998) (Nickerson, J.); *Broadcast Music, Inc. v. Sports Bar, Inc.*, 145 F.R.D. 349, 350 (D.C. Del. 1992) ("the defense of indemnification asserted by defendant Legends Sports Bar is not a complete defense because it does not have any impact on plaintiff BMI's right to recover. The defense of indemnification only establishes defendant's right to recover from a third party in a collateral litigation"). Without a properly stated meritorious defense against Mr. Willis, this Court must dismiss the Rovegnos' motion to vacate the default judgment. *State Street*, 374 F.3d at 174 ("the absence of such a defense is sufficient to support the district court's denial of the defendants' first Rule 60(b) motion").

While Rule 60(b)(3) allows courts to vacate a default judgment if there is a showing of fraud, "a movant 'must show that the conduct complained of prevented the moving party from fully and fairly presenting his case.'" *State Street*, 374 F.3d at 158, *citing, Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987). Clearly, the Rovegnos have not managed to show

they were prevented from presenting their case by alleged fraud by Mr. Willis. They do not

contend in their motion papers they were in any way prevented by Mr. Willis from fairly

presenting their case. Instead, the Rovegnos seem to allege that Mr. Metheny's alleged fraud

caused them injury.

The Rovegnos attempt to raise the alarming spectre of "mortgage rescue fraud", but this

case is unrelated to any such claims. They argue they are entitled to deny Mr. Willis' claims

upon the grounds that Mr. Willis and Mr. Metheny allegedly defrauded them in a "egregious,

massive scheme". The Rovegnos cite to *Watson v. Melnikoff*, 19 Misc.3d 1130(A), Slip Copy,

2008 WL 1990943 (N.Y.Sup.), for support, however this case is easily distinguishable from the

present matter. Most importantly, the Rovegnos have brought forth absolutely no evidence that

Mr. Willis was engaged in any sort of "scheme" to defraud them. Mr. Willis had never

previously known of the Rovegnos or any sort of agreements Mr. Metheny allegedly had with

them. Furthermore, in *Watson*, the plaintiffs in *Watson* were paying three times the amount in

rent than when they previously were paying the mortgage off as homeowners. The defendants

received significant windfall from their lucrative agreement. *Watson*, 2008 WL 1990943 at *4. In

the current action, however, the Rovegnos were paying only what Mr. Willis had to pay for his

monthly mortgage payments (*see* Willis Affidavit, Paragraph 8). This sum was nearly identical

to what the Rovegnos previously paid as mortgage payments when they owned the Property, and

Mr. Willis received no significant windfall. The deceptive circumstances in *Watson* are not

present in this case, as the facts indicate. It is also clear that Mr. Willis was not involved in, nor

knowledgeable about, any agreements between Mr. Metheny and the Rovegnos, and thus *Watson*

is inapplicable to the present matter.

Furthermore, the Rovegnos' allege that the signatures found on the executed Lease Agreement were fraudulently lifted from the lease agreement with the buy back option that they produced. These accusations are unsubstantiated. Documents indicate that the Rovegnos entered into the Purchase Agreement with Mr. Willis on April 15, 2006 and executed a Warranty Deed at the closing on the Property which occurred on May 5, 2006. However, the allegedly "lifted" signatures that appear on executed lease agreement produced by Mr. Willis are dated May 25, 2006. It is unimaginable that the Rovegnos would enter into a Purchase Agreement and issue a Warranty Deed to the Property to Mr. Willis without first securing the supposed buy back option they allegedly believed they were given (*see* McFadin Declaration, Paragraph 9). Thus, the Rovegnos' baseless claim of fraud is unwarranted.

If anything, the Rovegnos should seek a separate action against Mr. Metheny for the alleged fraud, allowing the current partial default judgment to stand. The default judgment is unrelated to the claims of fraud aimed at Mr. Metheny. At no point have the Rovegnos shown that Mr. Willis was involved in fraud, let alone prevented them from fairly presenting their case. As the so-called meritorious defenses are aimed at Mr. Metheny, not Mr. Willis, the Rovegnos' attempts to vacate the default judgment on those grounds are inapplicable.

**POINT 4**

**THE ROVEGNOS CANNOT VACATE THE DEFAULT JUDGMENT UNDER**
**RULE 60(b)**

The Rovegnos also seek to vacate a default judgment under Rule 60(b), however they have failed to assert which of the six grounds for relief they believe they are entitled to. Regardless, the Rovegnos have not shown the Court would be justified in vacating the default judgment entered against them under *any* of the grounds set forth in Rule 60(b). The Rovegnos

19

have failed to meet even meet the fairly lenient standards of the catch-all Rule 60(b)(6), as they have not been able to show "exceptional circumstances" existed preventing them from responding.

As previously discussed, Rule 60(b) and Rule 55(c) typically are analyzed under the same criteria. *Franchise Holding II*, 375 F.3d at 927; *Burrell v. Henderson*, 434 F.3d at 831. Since the Rovegnos have failed to satisfy the three criteria which must be met in order to vacate a default judgment. The Rovegnos have not shown there conduct was not willful and/or excusable. The meritorious defenses asserted by them are directed at a non-party to this action, and thus inapplicable. Finally, the prejudice Mr. Willis would be subjected to if the judgment was overturned would be unduly burdensome. Thus, neither Rule 55(c) nor Rule 60(b)(1)-(5) entitles the Rovegnos to relief from the default judgment.

In *McNulty*, 137 F.3d at 739, the default was held as non-excusable neglect under Rule 60(b)(1) (similar to a finding of willfulness under Rule 55(c), per *Franchise Holding II*, 375 F.3d at 927) even though the plaintiff's attorney was fully aware that failure to answer the complaint would result in a default. The plaintiff was served with a complaint and even acknowledged its receipt. Similarly, the Rovegnos were served with complaints and have never denied receiving them. The records in both cases indicate that no adequate explanation was ever given as to why default judgments were allowed to be entered. The Rovegnos give no explanation (or at best a "flimsy" reason) as to what prevented them from responding to Mr. Willis' claims even though they had ample notice and time to respond.

The Rovegnos also have not shown exceptional circumstances existed, preventing them from responding. Therefore, the default judgment cannot be vacated under Rule 60(b)(6). In *Cirami I*, the Court found inadequate a defendant's excuse that they did not know the reason

their attorney permitted a summary judgment against them. Defendant relied on Rule 60(b)(6) in seeking relief from the default judgment. Neither an affidavit from either the attorney or his clients shed light on the reasons for the default. Only a vague explanation was given, which the court found to be insufficient. Unexplained reasons are not enough to show "exceptional circumstances" existed which prevented the moving party for responding under Rule 60(b)(6). *Cirami I*, 535 F.2d at 739, *citing, Schwarz v. United States*, 384 F.2d 833, 835 (2d Cir. 1967).

The Rovegno affidavit mentioned only an inability to respond due to "emotional distress". This does not provide an actual, clear reason for not responding to the default. The Rovegnos seek to use this vague excuse to persuade the Court to overturn the default judgment against them. However, as the Court in *Cirami I* held, vagueness will not warrant a finding of "exceptional circumstances" existing. The Rovegnos failed to provide a precise, tangible reason for their default.

Furthermore, as previously discussed, there is no clear reason or indication of any sort of effort by the Rovegnos to serve an answer or seek counsel relating to this current matter. From the time the Rovegnos were first made aware of the claims against them in May 2007, to when Mr. Willis moved the Court for partial default judgment on October 18, 2007, all the way through when the partial default judgment was granted on October 30, 2007, the Rovegnos made no effort to protect themselves in this matter. During the five month period, the Rovegnos vaguely allege they were unable to any secure legal representation to protect their interests or prevent a default judgment being entered against them. Suddenly however, after all this time, the Rovegnos have now been able to secure representation. It is unclear what change in he Rovegnos' circumstances has allowed for this turn around.

21

The Rovegnos have failed to meet the criteria necessary to overturn a default judgment under Rule 55(c), and consequently Rule (60)(b)(1)-(5). Furthermore, the Rovegnos have not provided an adequate explanation as to what "exceptional circumstances" could entitle them to relief under Rule 60(b)(6). More specific solid evidence, providing a satisfactory explanation for the Rovegnos' inaction is needed. Looking at the foregoing, along with the fact that the Rovegnos have established a pattern of allowing default judgments to be entered against them, the current default judgment should be upheld.

**POINT 5**

**THE ROVEGNOS HAVE NOT ACTED WITHIN REASONABLE TIME**

Rule 60(c) states a motion under Rule 60(b) must be made within a "reasonable time". Courts take into account the prejudice of vacating the judgment to the non-moving party, as well as whether the other party had good reason for not acting sooner. "Exceptional circumstances" must be found to warrant the delay of the Rovegnos in responding to Mr. Willis' claims. *Old Republic Ins. Co. v. Pacific Fin. Servs. of America, Inc.*, 301 F.3d 54, 59 (2d Cir. 2002). As previously discussed, the Rovegnos have not offered any convincing reason for their failure to respond to their summons in this action. Furthermore, as discussed above, Mr. Willis would be greatly prejudiced if the default judgment is vacated. The long, time-consuming and very expensive discovery process was nearly complete. If the judgment is vacated, Mr. Willis would be back at square one, re-taking depositions in some instances, incurring more expense, delay, and prejudice.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully request that the Rovegno Defendants' motion to vacate the partial default judgment entered against them in this action be denied.

22

Dated: New York, New York
       June 11, 2008

                                    Respectfully Submitted,


                                    **THE McFADIN LAW GROUP**
                                    *Attorneys for Plaintiff*

                        By:

                                    Diane McFadin (DM2381)
                                    11 Broadway, Suite 715
                                    New York, NY 10004
                                    646.723.2757




To:    John Piskora, Esq.
       Loeb & Loeb, LLP
       345 Park Avenue
       New York, NY 10154
       *Attorneys for Lawyers Title Insurance Corp.*

       Brett A. Scher, Esq.
       Wilson, Elser, Moskowitz, Edelman & Dicker LLP
       150 East 42nd Street
       New York, NY 10017
       *Attorneys for Acranet*

       Michael G. Levin, Esq.
       Levin & Chetkof, LLP
       265 Post Avenue – Suite 290
       Westbury, New York 11590
       *Attorneys for Rovegnos*